300 Ga. 820
FINAL COPY

S16A1884. CITY OF CUMMING et al. v. FLOWERS et al.
S16A1885. KERLEY FAMILY HOMES, LLC et al. v. FLOWERS et al.


NAHMIAS, Justice.

This case involves the procedure by which a local zoning board's quasi-judicial decision on a variance request may be appealed to the superior court. Kerley Family Homes, LLC ("Kerley") was granted a variance by the City of Cumming's Board of Zoning Appeals ("BZA"). Neighboring homeowners aggrieved by the variance sought to appeal the BZA's decision by filing a complaint seeking a writ of mandamus and an injunction in the superior court. The defendants argued that they were entitled to summary judgment against the homeowners because the zoning variance decision was a quasi-judicial decision that can be challenged in the superior court only by a petition for certiorari under OCGA § 5-4-1. They were right, and we therefore reverse the trial court's denial of summary judgment. In doing so, we disapprove cases from this Court and the Court of Appeals — the leading one being Jackson v. Spalding County, 265 Ga. 792 (462 SE2d 361) (1995) — to the extent that they say that when the

local zoning ordinance does not provide for a petition for certiorari, mandamus is the proper way to appeal a quasi-judicial variance decision. That line of procedural precedent was founded on unsound reasoning, and we now abandon it in order to ensure that quasi-judicial zoning decisions are appealed the same way under OCGA § 5-4-1 throughout the State, just as OCGA § 5-4-1 is consistently applied to other quasi-judicial decisions of local entities.

1.    Kerley Family Homes, LLC, was building townhouses on property it owned in Cumming. Acknowledging that its construction plans violated the requirement of the City's Zoning Ordinance that buildings be set back at least 20 feet from the adjoining property line, Kerley filed a variance application to change the required setback for buildings on some of its property. Kerley then amended that application, asking to change the required setback to five feet for the lots that were already built (lots 38-42) and fifteen feet for the lots that had not yet been built (lots 21-37). Kerley represented that it was constructing the buildings too close to the adjoining property because the surveyor had made a mistake.

On March 17, 2015, the City's Planning Board held a public hearing and recommended denial of the original variance plan submitted by Kerley. Kerley

2

appealed that decision to the City's Board of Zoning Appeals, which consists of the Mayor and City Council. On April 21, 2015, the BZA held a public hearing on the variance request. The City's planning director advised the BZA that lots 38-42 were actually still under construction, and that Kerley had modified its request to ask for an 11-foot setback for lots 38-42 and had agreed to demolish the townhouse being built on lot 42 and replace it with one conforming to the 20-foot setback requirement. The planning director noted that the Planning Board had not formally considered the revised plan but that, after review, the members now individually recommended approving the revised plan. After hearing from Kerley's lawyer and two representatives of homeowners in the adjoining neighborhood, the BZA voted to grant the variance application with several conditions, including the removal of lots 21-37 from the request and the demolition of the townhouse on lot 42.

On May 21, 2015, neighboring homeowners Robert G. Flowers and Kathleen Donovan along with Castleberry Homeowners Association Two, Inc. (collectively, "the Homeowners") filed a complaint in Forsyth County Superior Court against the City, the individual members of the City Council, the Mayor, and the "City Council and/or Members of Board of Zoning Appeals"

(collectively, "the City defendants"), as well as "Kerley Family Homes, LLC and Kerley Family Homes at HR, LLC" (collectively, "the Kerley defendants"). The Homeowners sought to appeal the grant of the variance on the grounds that it was a gross abuse of discretion, arbitrary and capricious, erroneous, and ultra vires. The complaint requested a writ of mandamus to "compel[ ] the Defendants Mayor and City Council and/or the board of zoning appeals to comply with the law" as well as "an injunction restraining and enjoining Defendants from violating the Zoning Ordinance."

The City and Kerley defendants both filed answers, and the City defendants then filed a motion to dismiss and a supporting brief, to which they attached portions of the City ordinances, including the Zoning Ordinance. The City defendants argued that the Homeowners' complaint should be dismissed because a challenge to the variance decision was required to come to the superior court by a petition for certiorari under OCGA § 5-4-1. The Kerley defendants joined the motion to dismiss.

The superior court held a hearing on the motion to dismiss, at which the parties agreed to treat it as a motion for summary judgment and thus allow the court to consider the City ordinances attached to the filings. On March 29,

4

2016, the superior court denied summary judgment. The court then granted both sets of defendants' requests for certificates of immediate review, and on May 16, the City defendants and Kerley defendants filed applications for interlocutory appeal in the Court of Appeals, which were transferred to this Court because the cases involve an issue of mandamus relief and the applications were filed before January 1, 2017.[1] We granted the applications on June 22, 2016, and the City defendants and Kerley defendants both filed timely notices of appeal. The City defendants' case was orally argued on November 7, 2016, and the Kerley defendants' case was submitted for decision on the briefs. The two cases, which raise the same issue, have been consolidated for decision in this opinion.

2. In ruling that the Homeowners could proceed on their petition for mandamus, the superior court relied on the procedural direction from this Court that "where the zoning ordinance does not provide a means of appeal from the denial of a request for a variance, the landowner travels to superior court by writ of mandamus." Shockley v. Fayette County, 260 Ga. 489, 490-491 (396 SE2d

---

[1] We note that under the Appellate Jurisdiction Reform Act of 2016, appellate jurisdiction over almost all "cases involving extraordinary remedies" like mandamus lies in the Court of Appeals when the notice of appeal or application to appeal in the case is filed on or after January 1, 2017. See Ga. L. 2016, p. 883, §§ 3-1 (codified as OCGA § 15-3-3.1), 6-1 (c).

883) (1990). Although the concept that the form of appeal of certain zoning decisions may depend on the local ordinance has been mentioned in several cases from this Court and the Court of Appeals, as discussed below, its foremost articulation in the context of a quasi-judicial zoning variance decision was in Jackson v. Spalding County, 265 Ga. 792 (462 SE2d 361) (1995). In Jackson, the local zoning ordinance provided for certiorari and the appealing parties had filed a petition for certiorari; the dispositive issue in the case was whether certiorari under OCGA § 5-4-1 was ever available to challenge a zoning variance decision. This Court clearly held — for the first time — that a zoning variance decision was quasi-judicial and thus subject to certiorari review under OCGA § 5-4-1. See Jackson, 265 Ga. at 793-794. But the Court also said that "[w]hen the zoning ordinance fails to prescribe a method of judicial review," mandamus is the proper method to appeal a variance decision. Id at 793. It is this part of Jackson, which we will refer to as "the local-ordinance requirement," that the City and Kerley defendants have asked us to reconsider and reject.

3.     Before we grapple with the viability of the local-ordinance requirement, we must determine whether it applies in this case. Specifically, we must determine if the BZA's decision to grant a variance to Kerley was, like the

6

variance decision in <u>Jackson</u>, quasi-judicial. If it was not, then <u>Jackson</u>, which rests on the quasi-judicial nature of the decision, is inapplicable, and a petition for certiorari would not be available regardless of the local ordinance. OCGA § 5-4-1 (a) says:

> The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers, including the judge of the probate court, except in cases touching the probate of wills, granting letters testamentary, and of administration.

Thus, "[c]ertiorari is not an appropriate remedy to review or obtain relief from the judgment, decision or action of an inferior judicatory or body rendered in the exercise of legislative, executive, or ministerial functions, as opposed to judicial or quasi-judicial powers." <u>Presnell v. McCollum</u>, 112 Ga. App. 579, 579 (145 SE2d 770) (1965).

No party here challenges <u>Jackson</u>'s main holding — that the variance decision at issue there was quasi-judicial. See 265 Ga. at 794-795. Applying <u>Jackson</u>'s reasoning on that point, it is clear that the BZA's variance decision in this case was also quasi-judicial. Pursuant to the City's Zoning Ordinance, in ruling on Kerley's requested variance, the BZA (composed of the Mayor and the City Council) was required to consider "whether the facts applying to a

7

specific piece of property warrant relief from zoning under the standards set in the [local] ordinance." Id. at 793.[2] Thus, as in <u>Jackson</u>, the variance decision required the zoning board to "determine[ ] the facts and appl[y] the ordinance's legal standards to them," which is a "decision-making process . . . akin to a

---

[2] Section 113-50 of the City's Zoning Ordinance provides that the BZA may grant a variance only if it

> will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of these regulations will in an individual case, result in unnecessary hardship, so that the spirit of these regulations shall be observed, public safety and welfare secured, and substantial justice done. The existence of a nonconforming use of neighboring land, buildings or structures in the same zoning district or of permitted or nonconforming uses in other districts shall not constitute a reason for the requested variance. A variance may be granted in an individual case of unnecessary hardship, after appropriate application, upon specific findings that all of the following conditions exist. The absence of any one of the conditions shall be grounds for denial of the application for variance.
> (1) There are extraordinary and exceptional conditions pertaining to the particular piece of property in question because of its size, shape or topography that are not applicable to other land or structures in the same district;
> (2) A literal interpretation of the provisions of these zoning regulations would create an unnecessary hardship and would deprive the applicant of rights commonly enjoyed by other property owners within the district in which the property is located;
> (3) Granting the variance requested will not confer upon the property of the applicant any special privileges that are denied to other properties of the district in which the applicant's property is located;
> (4) Relief, if granted, will be in harmony with the purpose and intent of these regulations and will not be injurious to the neighborhood or general welfare in such a manner as will interfere with or discourage the appropriate development and use of adjacent land and buildings or unreasonabl[y] affect their value;
> (5) The special circumstances are not the result of the actions of the applicant;
> (6) The variance requested is the minimum variance that will make possible the legal use of the land, building, or structure; and
> (7) The variance is not a request to permit a use of land, building or structures which are not permitted by right in the district involved.
> . . .

8

judicial act." Id. at 794. In addition, when a variance issue is brought to the BZA, §§ 113-48 and 113-49 of the Zoning Ordinance require that the board hold a hearing that is open to the public, give "due notice to the aggrieved party" of the hearing, and inform all parties of its decision in writing within a reasonable time. At the hearing in this case, the BZA heard from parties for and against granting the variance. See Jackson, 265 Ga. at 794-795.

In sum, the BZA's discretion was "'tightly controlled by the ordinance,'" RCG Properties, LLC v. City of Atlanta Bd. of Zoning Adjustment, 260 Ga. App. 355, 361 (579 SE2d 782) (2003) (citation omitted), and the BZA's decision was "immediate in application, specific in application, and . . . involve[d] an assessment of 'facts about the parties and their activities, businesses, and properties.'" State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan, 299 Ga. 392, 401 (788 SE2d 455) (2016) (citations omitted). See also Bentley v. Chastain, 242 Ga. 348, 350 (249 SE2d 38) (1978) (explaining that when administrative agencies "'are called upon to make factual determinations and thus adjudicate, . . . they are . . . considered to be acting in a quasi-judicial capacity'" (citation omitted)). Accordingly, the variance

decision was quasi-judicial.[3]

The Homeowners contend that Kerley's requested variance did not satisfy a number of the conditions required by the Zoning Ordinance. In particular, pointing to Kerley's admission that its failure to meet the setback requirement was due to a surveyor's mistake, the Homeowners assert that the requirement that the special circumstances necessitating the variance were "not the result of the actions of the applicant" was not fulfilled. The Homeowners argue that even though the Mayor and the City Council were purporting to act as the BZA, because they disregarded these required conditions, they *actually* exercised their legislative power by granting a variance that was not permitted under the current zoning regulations. The BZA may well have abused its discretion in concluding that all of the conditions were met and thus in granting the variance to Kerley, but that is a question of the *correctness* of the BZA's decision, not its *nature*. A quasi-judicial decision does not become a legislative decision simply because it was wrong. See <u>Keystone Knights</u>, 299 Ga. at 401 ("Administrative

---

[3] We note that Section 113-120 of the City's Zoning Ordinance describes variance decisions as "administrative or quasi-judicial," but that characterization is not determinative. "[S]ubstance matters far more than form, and the courts need not 'capitulate to the label that a government body places on its action.'" <u>Keystone Knights</u>, 299 Ga. at 402 (citation omitted). See also <u>Mack II v. City of Atlanta</u>, 227 Ga. App. 305, 309 (489 SE2d 357) (1997).

determinations of a legislative nature are prospective in application, general in application, and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person." (citations omitted)).

4.      Once we have determined that the BZA's decision to grant Kerley a variance was quasi-judicial, the remaining analysis of this case should be straightforward.  As <u>Jackson</u> held, an administrative zoning body's quasi-judicial decision comes within the scope of OCGA § 5-4-1 and thus is subject to appeal to the superior court by petition for certiorari.  See <u>Jackson</u>, 265 Ga. at 793-794.  And as this Court has often held, in conformance with the text of the mandamus statute, "'if there be a specific remedy by certiorari, the right of mandamus will not lie.'" <u>City of Statesboro v. Dickens</u>, 293 Ga. 540, 542 (748 SE2d 397) (2013) (quoting <u>McClung v. Richardson</u>, 232 Ga. 530, 531 (207 SE2d 472) (1974)).  See also OCGA § 9-6-20 (explaining that "the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights").  Because the Homeowners here sought review in the superior court by mandamus rather than certiorari, their mandamus claim was improper and the defendants should have been granted summary

11

judgment.

The local-ordinance requirement, however, directs a different analysis, saying that the BZA's quasi-judicial decision may be appealed by certiorari only if the City's Zoning Ordinance so provides. See Jackson, 265 Ga. at 793. It is this holding of Jackson that the City and Kerley defendants contend is unfounded and ask us to disapprove.

The hurdle the defendants must clear is the doctrine of stare decisis, but that is not an insurmountable hurdle.

> Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process . . . . Nevertheless, when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow precedent . . . . Stare decisis is not an inexorable command; rather, it is a principle of policy and not a mechanical formula of adherence to the latest decision . . . . In considering whether to reexamine a prior erroneous holding, we must balance the importance of having the question *decided* against the importance of having it *decided right*. In doing so, we consider factors such as the antiquity of the precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.

Woodard v. State, 296 Ga. 803, 812 (771 SE2d 362) (2015) (citations and punctuation omitted; emphasis in original). See also State v. Hudson, 293 Ga.

12

656, 661 (748 SE2d 910) (2013); State v. Jackson, 287 Ga. 646, 647 (697 SE2d 757) (2010). An evaluation of these factors weighs strongly in favor of disapproving the local-ordinance requirement.

5. We consider first the most important of these factors — the soundness of the precedent's reasoning — and we conclude that it "cuts most strongly against retaining [the local-ordinance requirement]." Woodard, 296 Ga. at 813.

(a) The local-ordinance requirement conflicts with OCGA § 5-4-1 and this Court's interpretation and application of that statute in non-zoning contexts. A certiorari statute like OCGA § 5-4-1 has been in the Georgia Code since 1860. See Code of 1860, § 3957 ("The writ of certiorari will lie for the correction of errors committed by . . . any inferior judicatory or any person exercising judicial powers . . . .").[4] And for generations this Court has held that judicial and quasi-judicial decisions made by city and county governing authorities may be appealed to the superior court by certiorari pursuant to this state certiorari statute

---

[4] See also OCGA § 5-4-3 ("When either party in any case in any inferior judicatory or before any person exercising judicial powers is dissatisfied with the decision or judgment in the case, the party may apply for and obtain a writ of certiorari by petition to the superior court for the county in which the case was tried, in which petition he shall plainly and distinctly set forth the errors complained of. . . .").

— with no reference to whether the local ordinance also provides for certiorari review. See, e.g., Goddard v. City of Albany, 285 Ga. 882, 883 (684 SE2d 635) (2009) ("'If the [local] officer exercised judicial powers, his or her actions are subject to review on certiorari [subject to OCGA § 5-4-1].'" (citation omitted)); McClung, 232 Ga. at 532 ("'[A]ppeals from [quasi-judicial] decisions can only be had by writ of certiorari under [a predecessor to OCGA § 5-4-1] where no additional right of appeal is provided by [state] law.'" (citation omitted)); Carr v. City Council of Augusta, 124 Ga. 116, 118 (52 SE 300) (1905) ("[W]here the duty imposed upon the municipal council clearly requires the exercise of judicial powers, or even the exercise of quasi judicial powers, the general rule is that an error committed may be reviewed on certiorari."). The decisions of the Court of Appeals are in accord. See, e.g., Rozier v. Mayor and Aldermen of City of Savannah, 310 Ga. App. 178, 179 (712 SE2d 596) (2011); Jordan v. City of Atlanta, 283 Ga. App. 285 (641 SE2d 275) (2007); Starnes v. Fulton County School Dist., 233 Ga. App. 182, 185 (503 SE2d 665) (1998). The Jackson Court offered no justification for creating an exception to this law for zoning variance decisions, and the Homeowners also offer none.

(b) The local-ordinance requirement that the Jackson Court adopted

14

without apparent reflection emerged when it was uncertain whether local zoning decisions like variance decisions qualified as a decision "by [an] inferior judicatory or [a] person exercising judicial powers" under OCGA § 5-4-1.[5] This Court's opinions on that question were inconsistent. In some cases, the Court simply concluded that the party challenging the local zoning board's variance or special or conditional use permit decision could proceed by mandamus, without addressing whether the decision was quasi-judicial or whether certiorari was therefore available as a means to appeal. See, e.g., City of Atlanta v. Wansley Moving & Storage Co., 245 Ga. 794, 795 (267 SE2d 234) (1980)

---

[5] We note at the outset of this discussion that the initial cases expressing the local-ordinance requirement did not involve zoning variances, but rather conditional or special use permits. See, e.g., City of Atlanta v. Wansley Moving & Storage Co., 245 Ga. 794, 795 (267 SE2d 234) (1980) ("Judicial review of the denial of conditional use permits has traditionally been by way of mandamus . . . . We find no reason to treat special use permits differently from conditional use permits insofar as the means of judicial review is concerned."). See also Shockley, 260 Ga. at 490-491 (citing Wansley and treating the variance decision at issue like a conditional or special use permit decision with no explanation). Special and conditional use permits "involve a special use authorized by the existing zoning ordinance (e.g., airports, cemeteries, drive-in theaters, mobile home and trailer parks, quarries) but the ordinance provides that such uses shall be allowed only upon the condition that it be approved by the appropriate governmental body." Wansley, 245 Ga. 794 (citation omitted). Variance requests are similar, except that the nonconforming use requested is not explicitly provided for in the zoning ordinance, and the zoning authority must "consider[ ] whether the facts applying to a specific piece of property warrant relief from zoning under the standards set in the county ordinance." Jackson, 265 Ga. at 793. Although the City and Kerley defendants point to this distinction as a reason to abandon the local-ordinance requirement, it is not clear that conditional and special use permit cases are meaningfully different from variance cases in this context, at least in cases where the zoning board must apply a set of factors set out in the zoning ordinance to the specific facts of the conditional or special use request.

15

(noting that "[t]he city does not argue that the [special use permit] decision of the city council was a judicial decision"); Pruitt v. Meeks, 226 Ga. 661, 662 (177 SE2d 41) (1970) (conditional use permit).  In other cases, the Court specifically held that certiorari was *not* a permissible means of appeal because the zoning decision was not judicial or quasi-judicial.  See Intl. Funeral Svcs., Inc. v. DeKalb County, 244 Ga. 707, 709 (261 SE2d 625) (1979) ("The denial of an application for a variance not being a judicial decision, certiorari is not applicable."); Manning v. A. A. B. Corp., 223 Ga. 111, 115 (153 SE2d 561) (1967) (rejecting the contention that the proper method to appeal the denial of a conditional use permit was a petition for certiorari because "the board of commissioners was not acting as a judicial body, and it did not render a judicial or quasi-judicial judgment").  Other cases decided during the same period, however, held that a conditional use permit decision could be appealed by certiorari, see Martin Marietta Corp. v. Macon-Bibb County Planning and Zoning Comm., 235 Ga. 689, 692 (221 SE2d 401) (1975), and suggested that variance decisions may be quasi-judicial, see Bentley, 242 Ga. at 349 n. 4.[6]

---

[6] Wansley distinguished Martin Marietta on the ground that the local zoning ordinance in Martin Marietta provided for judicial review by certiorari.  See Wansley, 245 Ga. at 795-796. Although the Martin Marietta Court mentioned that provision, the rationale for its holding was

16

In three later cases, the Court recognized that some of the powers exercised by a local zoning authority are quasi-judicial. See Shockley, 260 Ga. at 491 (explaining in a variance case that "the powers delegated to a board of zoning appeals . . . are quasi-judicial and quasi-legislative"); Moon v. Cobb County, 256 Ga. 539, 539 (350 SE2d 461) (1986) (explaining that in ruling on a special use permit, the local zoning body "acts in a quasi-judicial capacity to determine the facts and apply the law"); Dougherty County v. Webb, 256 Ga. 474, 477 n. 3 (350 SE2d 457) (1986) (explaining that "where a special permit is sought under terms set out in the [zoning ordinance]" and "the landowner must present his case on its facts and the law to the local governing body," then "[t]hat body acts in a quasi-judicial capacity to determine the facts and apply the law"). However, these opinions — all citing only Wansley — continued to say that in the absence of a local ordinance providing a different process, mandamus

_____

actually that mandamus was not available because the applicant was entitled to a permit only "after a hearing before and a finding by the body empowered to zone," and the zoning board had limited discretion to grant or deny permits. Martin Marietta, 235 Ga. at 692.

In Bentley, the Court said in a footnote: "In granting a variance the Board of Zoning Appeals must consider whether the factual situation of a given individual's property warrants relief from the general zoning ordinance under the standards set out by the delegating authority; thus, it can be argued that it is acting in a quasi-judicial capacity when making this decision." 242 Ga. at 349 n. 4. The Court did not address, however, whether such a quasi-judicial decision might be appealable through a petition for certiorari.

17

was the proper way to appeal variance or special or conditional use permit decisions. See Shockley, 260 Ga. at 490-491; Moon, 256 Ga. at 540; Webb, 256 Ga. at 475.

In 1995, Jackson resolved the uncertainty about whether certiorari is available to appeal a variance decision. Citing Shockley and Bentley, this Court overruled Intl. Funeral and squarely held that a variance decision *was* a quasi-judicial decision and that it therefore could be appealed by a petition for certiorari under OCGA § 5-4-1. See Jackson, 265 Ga. at 793-794. Unfortunately, Jackson also repeated the proposition that mandamus is available "[w]hen the zoning ordinance fails to prescribe a method of judicial review" such as certiorari. Id. at 793 & n.4 (citing Shockley and Wansley). Thus, at the same time Jackson eliminated the uncertainty that had generated the local-ordinance requirement, it preserved the requirement without explanation and apparently without recognizing the inconsistency. We should not perpetuate that analytical error.

(c) The most troubling consequence of the local-ordinance requirement is that it allows local ordinances to effectively preempt the general certiorari statute. According to Jackson, the local ordinance rather than OCGA § 5-4-1

18

determines how a variance decision must be appealed; in fact, a city or county may turn the state statute off or on simply by amending its ordinance. This scheme does not comport with our Constitution, under which general laws are supreme over local ordinances, including in the field of zoning.[7]

(d) Indeed, this Court has already gone part of the way toward correcting the misstatements of appellate procedure in <u>Jackson</u> and similar cases by applying this constitutional principle in the context of attempts to take *direct* appeals of quasi-judicial zoning decisions to the superior court. In a number of cases, this Court and the Court of Appeals read <u>Wansley</u> and <u>Jackson</u> not just to allow the local ordinance to control whether *certiorari* is available but to say that a local ordinance can prescribe *any* method of appeal, including direct appeal, to the superior court. Thus, the Court in <u>Webb</u> said, citing <u>Wansley</u>, that

---

[7] See Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a) ("Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws."); Art. IX, Sec. II, Par. I (a) ("The governing authority of each county shall have legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government for which no provision has been made by general law and which is not inconsistent with this Constitution or any local law applicable thereto. . . ."); Art. IX, Sec. II, Par. IV ("The governing authority of each county and of each municipality may adopt plans and may exercise the power of zoning. This authorization shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power.").

19

when appealing a quasi-judicial decision regarding a special use permit, "[a] disappointed landowner travels to superior court by direct appeal, if the zoning ordinance so provides, or otherwise by mandamus." Webb, 256 Ga. at 477 n. 3. Webb's language was repeated in Moon, 256 Ga. at 540, and in Fulton County v. Bartenfeld, 257 Ga. 766, 770 (363 SE2d 555) (1988), and Jackson cited it without disapproval, see Jackson, 265 Ga. at 793 n. 3. See also Massey v. Butts County, 281 Ga. 244, 244 n. 1 (637 SE2d 385) (2006) ("The local zoning ordinance generally contains the procedure governing the filing of a judicial appeal from the decision of the local board of zoning appeals.").

The Court of Appeals also picked up this broad expression of local government control over zoning appeals. See Targovnik v. City of Dunwoody Zoning Bd. of Appeals, 307 Ga. App. 140, 140 (704 SE2d 448) (2010) ("A city's zoning ordinance may specify a particular method of appellate review, including by writ of certiorari."); Hollberg v. Spalding County, 281 Ga. App. 768, 771 n. 13 (637 SE2d 163) (2006) (summarizing Jackson as holding that a "zoning ordinance may provide [the] method of review, whether by appeal or by writ of certiorari"); Beugnot v. Coweta County, 231 Ga. App. 715, 715 (500 SE2d 28) (1998) ("'A disappointed landowner travels to superior court by direct

20

appeal, if the zoning ordinance so provides, or otherwise by mandamus.'" (quoting Webb, 256 Ga. at 477 n. 3)); Cobb County v. Herren, 230 Ga. App. 482, 483 (496 SE2d 558) (1998) (summarizing Jackson as holding that a "county can specify means of judicial review of zoning matters, including denials of applications for variances and conditional use permits").

In 2012, however, this Court flatly rejected the proposition that a local government can, "without statutory authority, create a mechanism by which an appeal may be taken to the superior court." Haralson County v. Taylor Junkyard of Bremen, Inc., 291 Ga. 321, 323 (729 SE2d 357) (2012).  See also Walton County v. Scenic Hills Estates, Inc., 261 Ga. 94, 94 (401 SE2d 513) (1991) ("Absent express authorization by the General Assembly, a local zoning authority cannot create a direct appeal of a zoning decision.").  That is because under the Constitution, superior courts have appellate jurisdiction only "as may be provided by law." Ga. Const. of 1983, Art. VI, Sec. IV, Par. I.  And we have specifically held that "the General Assembly has not provided a statutory mechanism for the direct appeal to superior court of the zoning decisions of local governing authorities." Stendahl v. Cobb County, 284 Ga. 525, 526 (668 SE2d 723) (2008).  Although Haralson County did not discuss the contrary

statements in <u>Webb</u> and its progeny, <u>Haralson County</u> squarely and properly disavowed what <u>Webb</u> said, and we now formally disapprove <u>Webb</u> and similar cases to the extent that they say local ordinances can create means of appeal to the superior court, including direct appeals, that are not authorized by statute. And just as a local government cannot control by ordinance whether a direct appeal may be brought in the superior court, neither can a local government control by ordinance whether certiorari may be brought in the superior court under OCGA § 5-4-1.

To be sure, the local ordinance generally guides the reviewing court's evaluation of whether the local entity's decision was quasi-judicial, but this evaluation does not focus on the label the ordinance puts on the decision or what the ordinance says about subsequent judicial review. Instead, the court examines how the ordinance defines the parameters and requirements of the decision and the process the local entity uses to reach it — as we did in Division 3 above in determining that the BZA's variance decision in this case was quasi-judicial. See <u>Mack II v. City of Atlanta</u>, 227 Ga. App. 305, 309 (489 SE2d 357) (1997) ("It is not the description of the office, body, or board

22

performing the action that is scrutinized; the 'character and nature of the authorized function' controls the issue of whether the function is judicial or quasi-judicial." (citation omitted)). See also Keystone Knights, 299 Ga. at 402. In short, the local ordinance's control over the procedures that apply to the case ends when the case leaves the local government for the superior court.

(e) Because the local-ordinance requirement's "reasoning is unsound and contrary to the body of our law," the most important stare decisis factor weighs strongly in favor of disapproving the requirement. State v. Jackson, 287 Ga. at 658.

6. We turn next to the remaining stare decisis factors — the age of the precedent, the reliance it has induced, and its workability. See Woodard, 296 Ga. at 812.

(a) First, the local-ordinance requirement is "'neither ancient nor entrenched.'" Southall v. State, 300 Ga. 462, 468 (1) (796 SE2d 261) (2017) (citation omitted). As explained above, while the requirement has roots in the pre-Jackson confusion over which zoning decisions may be deemed quasi-judicial, the rule that a *quasi-judicial* variance decision may be appealed by

certiorari only if the local ordinance provides for certiorari has existed only for the 21 years since Jackson. "We have overruled precedents as old and older than [Jackson], and 'without more, that we have been wrong for many years . . . is no reason to persist in the error.'" Southall, 300 Ga. at 468 (1) (citation omitted) (overruling a 45-year-old precedent). See also Hudson, 293 Ga. at 661 (explaining that the age of a 38-year-old precedent was "an insufficient rationale for adhering to it, particularly when weighed against the countervailing factors"); Sosniak v. State, 292 Ga. 35, 40 (734 SE2d 362) (2012) (overruling an 18-year-old precedent involving appellate procedure).

Moreover, since Jackson, the specific principle that a variance or a special or conditional use permit decision can be appealed by certiorari only if the local ordinance so provides appears to have been repeated only a handful of times. See Dickens, 293 Ga. at 542; Haralson County, 291 Ga. at 323; DeKalb County v. Wal-Mart Stores, Inc., 278 Ga. 501, 502 (604 SE2d 162) (2004); Fulton County v. Congregation of Anshei Chesed, 275 Ga. 856, 858 (572 SE2d 530) (2002). None of those opinions offered any additional reasoning supporting the local-ordinance requirement, and in only one of the cases, Haralson County, did

24

the requirement actually control the result of the case; in the other cases, the local ordinance provided for a certiorari petition, which the aggrieved party filed, or the party filed for a writ of mandamus and the method of appeal was not challenged.

(b) Second, "'(t)he issue is one of appellate procedure, not contract, property, or other substantive rights in which anyone has a significant reliance interest.'" Southall, 300 Ga. at 467 (1) (citation omitted). Compare Savage v. State of Ga., 297 Ga. 627, 642 (774 SE2d 624) (2015) (explaining that overruling the line of precedent at issue would undermine numerous intergovernmental contracts). We recognize that in this particular case, the Homeowners may have sought review of the BZA's variance decision by mandamus rather than certiorari based on precedents like Jackson. But there is no indication that many (if any) other pending appeals will be dismissed as a result of our decision today.[8] And going forward, appeals of these types of zoning decisions will remain available; they simply will need to proceed by certiorari rather than mandamus regardless of what the local ordinance says.

[8] A pending appeal would be dismissed based on today's decision only if it was also brought from a quasi-judicial zoning decision by petition for mandamus rather than by certiorari and the local ordinance did not provide for certiorari.

Under these circumstances, the reliance interests at stake are not substantial enough to be considered a meaningful factor in the stare decisis analysis.

(c) Finally, although the local-ordinance requirement is not unworkable, it is not as workable as the correct rule. Under the requirement, if a local ordinance says that the losing party may appeal a quasi-judicial variance decision by certiorari, the party must file a petition for certiorari. If the ordinance does not so provide, the party must appeal by petition for mandamus. But determining whether an ordinance actually provides for certiorari is not always easy. It is easy if the local ordinance refers explicitly to "certiorari." See, e.g., Dickens, 293 Ga. at 543; Jackson, 265 Ga. at 792. But in cases like this one, the ordinance may provide for some type of appeal, but whether that appeal is by certiorari is debatable. Section 113-120 of the City's Zoning Ordinance says:

> All decisions of the mayor and council or the board of zoning appeals are final and may be subject to appeal only by suit filed in the superior court of the county. In cases of legislative decisions (e.g., rezonings, conditional use permits, and text amendments), the review shall be de novo review. In cases of administrative or quasi-judicial decisions (e.g., variances), review shall be based upon

26

the existing record.

Whether this provision authorizes judicial review by certiorari has been a major source of contention between the parties and was the focus of much of the trial court's order.[9]

Determining whether a decision is quasi-judicial may also be difficult in some cases. See Keystone Knights, 299 Ga. at 401 ("'[T]he line between legislation and adjudication is not always easy to draw[.]'" (citation omitted)). But that determination must be made under the local-ordinance requirement too, because a decision that is not quasi-judicial cannot be appealed by certiorari under OCGA § 5-4-1 even if the local ordinance explicitly provides for certiorari. See Presnell, 112 Ga. App. at 579.

The inconsistency between the local-ordinance requirement and general principles of our appellate procedure (and constitutional) law creates a trap for unwary litigants, lawyers, and judges trying to determine if appeals of zoning decisions to the superior court properly proceed by certiorari or mandamus. See Christopher J. McFadden et al., Ga. Appellate Practice § 7:25 (Nov. 2016

---

[9] Given our conclusion, we need not delve into which party is right on this point.

27

update) (criticizing the "confusion" surrounding the local-ordinance requirement and noting that "[t]he party faced with a local zoning law or ordinance that does not provide for certiorari review is faced with a dilemma that may require filing both a certiorari petition and an alternative civil action for declaratory relief"). Would-be appellants must not only recognize that variance and special and conditional use permit cases have a unique appellate requirement imposed on them by case law, but also may wonder just how far this deviation from the rest of Georgia law extends. Does it, for example, apply to building or business permits based on grants or denials of variances or conditional use requests? See, e.g., Haralson County, 291 Ga. at 323 (citing Wansley to apply the local-ordinance requirement to the county zoning board's denial of a business permit based on a zoning violation). "[I]t is important that the Court refute its reasoning [in a mistaken decision] to ensure that the case can no longer be cited in efforts to pollute other streams of our law." State v. Jackson, 287 Ga. at 647. Thus, the workability factor also weighs in favor of disapproving the local-ordinance requirement.

(d) In sum, the stare decisis factors weigh heavily in favor of disapproving

Jackson, Shockley, Wansley, and other cases that have expressed the local-ordinance requirement in the context of zoning variances or conditional or special use permits, to the extent that these cases indicate that a quasi-judicial decision of a local zoning board may be appealed to the superior court by mandamus rather than certiorari based on what the local ordinance says about such appeals.

7. With the local-ordinance requirement set aside, and given our determination in Division 3, it is clear that OCGA § 5-4-1 applied in this case and that the Homeowners were entitled to seek review of the BZA's quasi-judicial decision granting a zoning variance to Kerley by petition for certiorari in the superior court. Because certiorari was available, mandamus was not. See OCGA § 9-6-20; Dickens, 293 Ga. at 542. Accordingly, the trial court erred in denying the City and Kerley defendants' motion for summary judgment and allowing the Homeowners' petition for mandamus to proceed, and we reverse that ruling.

8. We also reverse the trial court's ruling denying summary judgment and allowing the Homeowners' claim for an injunction to proceed. An injunction is

an equitable remedy available only when "no adequate remedy is provided at law." OCGA § 9-5-1. In this case, a petition for certiorari provided that adequate legal remedy.[10]

Judgments reversed. All the Justices concur.

Decided March 6, 2017 – Reconsideration denied March 30, 2017.

Zoning. Forsyth Superior Court. Before Judge Smith.

Miles, Patterson, Hansford, Tallant, Dana B. Miles, Lauren C. Giles, for City of Cumming et al.

Weissman, Nowack, Curry & Wilco, Frank O. Brown, Jr., for Kerley Family Homes et al.

Teague & Chambless, J. Stuart Teague, Jr., for Flowers et al.

---

[10] We note that even if the trial court's ruling allowing the mandamus claim had been correct, its ruling on the injunction would still be reversed. See Short v. City of Cornelia, 204 Ga. 217, 220 (49 SE2d 483) (1948) (explaining that because a grant of mandamus would provide the petitioner with all of the protection he requested, an injunction would not lie). We need not address the City defendants' other arguments regarding the claim for injunction.