**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 30, 2020**

# In the Court of Appeals of Georgia

A20A0765. CITY OF RINCON et al. v. ERNEST COMMUNITIES, LLC.

MARKLE, Judge.

This appeal arises from the denial of Ernest Communities, LLC's ("Ernest's") application for a land development permit to build town homes on its property in Rincon, Georgia. Ernest sued the city of Rincon, the city council, the mayor, the council members in their individual and official capacities, and the city planner (collectively "the City"), stating claims for declaratory judgment that the applicable city ordinance was void; permanent injunction; mandamus relief; and damages, pursuant to 42 USC § 1983.[1] The trial court denied summary judgment to the City,

---

[1] The complaint specifically named as defendants Ken Lee as mayor; Reese Browher, James Dasher, Ann Daniel, Christi Ricker, Levi Scott, and Paul Wendelken as council members; and LaMeisha H. Kelly as city planner.

granted partial summary judgment to Ernest, declared the ordinance void, and permanently enjoined the regulation of Ernest's property under the ordinance. The City now appeals. For the reasons discussed more fully below, we affirm in part, reverse in part, vacate in part, and remand the case with direction.

> Summary judgment is properly granted when the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *City of Atlanta v. Hotels.com, L.P.*, 332 Ga. App. 888, 890 (2) (775 SE2d 276) (2015).

So viewed, the record reflects that, in April 2017, Ernest filed an application with Rincon's Building and Zoning Department for a land development permit and approval of the site plans for the construction of 78 town homes on its property. As can be culled from the record, it appears that the master plan for the project was initially approved, but that revisions had been made to it, which had not been submitted to the City for approval prior to Ernest's application for the land development permit and approval of the site plans. Ernest's application was set to be heard at a council meeting, at which time counsel for Ernest and for the City

2

presented their arguments. Ernest challenged the authority of the council to require approval of the master plan. The council voted unanimously to deny Ernest's application because the master plan had not been approved.

Ernest then filed an action in the superior court, asserting claims for declaratory judgment and mandamus to declare the applicable ordinance void, permanent injunction, damages pursuant to 42 USC § 1983, and an additional mandamus claim to compel the issuance of building permits. Ernest moved for partial summary judgment on its declaratory judgment and injunction claims, contending that the City lacked authority to regulate its property because the City's Growth Management Code ("GMC"), which included its zoning ordinances, was void for (1) violating the Zoning Procedures Law ("ZPL"), OCGA § 36-66-1 et seq., and (2) improper adoption. In a series of motions, the City moved for summary judgment as to all of Ernest's claims, contending it was entitled to sovereign immunity and that Ernest was required to file a writ of certiorari to appeal the City's decision.

Thereafter, the trial court entered an order, granting partial summary judgment to Ernest, and denying the City's motions for summary judgment. The trial court found that the GMC had been improperly adopted and was thus void, and it

permanently enjoined the City from restricting the use of Ernest's property.[2] With regard to the City's grounds for its motions, the trial court found, as is relevant to this appeal, that the proceedings before the city council were not quasi-judicial, and therefore Ernest was not limited to filing a petition for writ of certiorari to challenge the council's denial of its application; and the claims for declaratory judgment, mandamus, and injunctive relief were not barred by sovereign immunity. This appeal followed.

1. The City contends that the trial court erred by denying its motion for summary judgment because Ernest's claims for declaratory judgment and injunction are barred by the doctrine of sovereign immunity. We conclude that the claim for declaratory judgment is not barred by sovereign immunity, pursuant to OCGA § 9-4-7 (b), but that there is no waiver of sovereign immunity as to the claim for injunctive relief.

Pursuant to OCGA § 36-33-1 (a), municipal corporations, such as the City, are immune from liability for damages. But the statute is silent as to immunity from suits seeking nonmonetary claims, such as declaratory judgment and injunctions. "[O]nly

---

[2] The trial court declined to grant Ernest a writ of mandamus to compel the issuance of the building permits, affording the City an opportunity to act in accordance with its holding that the GMC was void.

4

the legislature has the authority to enact a law that *specifically* waives a municipality's sovereign immunity." (Emphasis supplied.) *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003); Ga. Const. 1983, Art. IX, Sec. II, Para. IX. Thus, we may not infer from the omission of these types of claims in OCGA § 36-33-1 (a) that the City's immunity is waived, as Ernest would have us do.

However, the City's immunity may be abrogated by another statute. Cf. *Williams v. DeKalb County*, ___ Ga. ___ (4) (d) (840 SE2d 423, 435 (4) (d)) (2020); *City of Union Point v. Greene County,* 303 Ga. 449, 454 (1) (a) (812 SE2d 278) (2018) (waiver of sovereign immunity implicit in the language of Service Delivery Strategy Act because, to read the statute otherwise, would render it meaningless); *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii) (770 SE2d 832) (2015) (sovereign immunity is no bar to mandamus claims pursuant to OCGA § 9-6-20 et seq.). We therefore turn to the language of the Declaratory Judgment Act, OCGA § 9-4-1 et seq., to determine whether a waiver of a municipality's sovereign immunity is contained therein.

Significantly, OCGA § 9-4-7 (b) provides: "In any proceeding involving the validity of a municipal ordinance or franchise, the municipality shall be made a party

5

and shall be entitled to be heard as a party." Thus, it can be inferred from this language that a municipality is subject to a declaratory judgment action where, as here, the validity of its ordinance is challenged. "Because the General Assembly is presumed to intend something by passage of an act, we must construe its provisions so as not to render it meaningless." (Citation omitted.) *City of Union Point,* 303 Ga. at 454 (1) (a). Accordingly, we conclude that the City's sovereign immunity was waived with regard to the declaratory judgment claim, and we affirm the portion of the trial court's order finding such a waiver.

Not so with regard to the claim for permanent injunction, however. It is well settled in Georgia that sovereign immunity bars claims for injunctive relief. *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 597 (2), 602 (2) (755 SE2d 184) (2014). Ernest points to no law that would establish a waiver of the City's sovereign immunity with respect to its claim for injunctive relief. See *Atlanta Metro Leasing, Inc. v. City of Atlanta*, 353 Ga. App. 785, 791 (1) (839 SE2d 278) (2020) (party seeking the benefit of a waiver of sovereign immunity bears the burden of establishing the waiver). Nor have we found any. As such, we find that Ernest's claim for permanent injunction was barred by sovereign immunity. We therefore reverse the trial court's grant of the permanent injunction against the City.

6

2. Having found that Ernest's claims for declaratory judgment regarding the validity of the GMC may proceed, we turn to the City's argument that the trial court erred by granting summary judgment to Ernest and declaring the GMC void because it was not properly adopted. We agree.

As reflected in the record, the GMC was adopted in 1989, and amended in 2010. The 2010 revisions to the GMC were addressed at a public hearing on August 23, 2010, and the first reading of the ordinance was approved by the council at that hearing. The second reading was approved by the council on September 13, 2010. The adopting resolution, to which the GMC is attached, indicates that the ordinance was passed and approved by the mayor and city council on September 13, 2010. The adopting resolution also indicates the dates of the first and second reading, and is signed by the mayor and the city clerk. Notably, every page of the 2010 version of the GMC indicates the date of the first reading.

In its order, the trial court disregarded these measures and, instead, presumed that the City had two options for properly adopting the GMC: either by placing it on the minutes or incorporating it by reference therein. However, this presumption is unsupported by law. To the contrary, it is well settled in Georgia that the process of adopting an ordinance is controlled by the city's charter or by statute. *Toomey v.*

*Norwood Realty Co., Inc.,* 211 Ga. 814, 816-817 (1) (89 SE2d 265) (1955) ("The method of procedure prescribed in the passage of an ordinance or resolution by county or municipal authorities, to whom authority to legislate has been delegated by statute or charter, must be strictly followed. Unless the ordinance or resolution is adopted in compliance with the conditions and directions given, it will have no force. The method of procedure as provided in the statute or charter is generally mandatory and exclusive of all other methods."); *City Council of Augusta v. Irvin*, 109 Ga. App. 598, 599 (1) (137 SE2d 82) (1964); see also *Friedman v. Goodman*, 219 Ga. 152, 159 (3) (b) (132 SE2d 60) (1963) ("Neither the charter of the City of Augusta nor any other statute makes the spreading of ordinances on the minutes of the City Council of Augusta a requisite to their validity."); *Mid-Georgia Natural Gas Co. v. City of Covington*, 211 Ga. 163, 164 (1) (84 SE2d 451) (1954) (looking to the procedures set forth in the city's charter to determine that an ordinance was not properly adopted).

There is no statute that requires the City to place an ordinance on its minutes or otherwise incorporate it by reference therein as a condition precedent to adopting it. Compare OCGA § 36-1-25 (applicable to counties only). Even the ZPL makes no such mandate, but instead sets forth mandatory notice and hearing requirements prior to the adoption of a zoning ordinance. See OCGA § 36-66-5 (c).

8

The trial court was thus required to review the City's charter at the outset. Yet, the charter was not entered in the record. Nor did the trial court indicate that it took judicial notice of the charter in making its determination that the adoption was invalid.[3] See *Fitzpatrick v. Harrison*, 300 Ga. App. 672, 673, n. 1 (686 SE2d 322) (2009) ("before a trial court may take judicial notice of any fact, it must first announce its intention to do so on the record, and afford the parties an opportunity to be heard regarding whether judicial notice should be taken.") (citation and punctuation omitted). Rather, the trial court relied on case law involving the incorporation by reference of maps in *county* ordinances. See *East Ga. Land & Dev. Co., LLC* v. *Newton County*, 290 Ga. 732, 736-738 (2) (723 SE2d 909) (2012); *Reynolds v. Bd. of Commrs. of Paulding County*, 180 Ga. App. 516 (349 SE2d 536) (1986).[4]

---

[3] Although a court may not take judicial notice of ordinances, it may take judicial notice of city charter provisions. *City of Thomson v. Davis*, 92 Ga. App. 216, 218 (1) (88 SE2d 300) (1955).

[4] We are cognizant that the first division of *East Georgia Land & Dev. Co., LLC* addresses the issue of whether the zoning ordinance was properly adopted, however the trial court cites to language from the second division of that opinion. 290 Ga. at 733 (1). Moreover, that case is further distinguished because it involves a county ordinance, and the operation of a statute applicable only to counties. Id.; see OCGA § 36-1-25.

In its brief before this court, Ernest relies on *City Council of Augusta*, 109 Ga. App. at 601 (3), which similarly focuses on the issue of whether a map was properly incorporated by reference in an ordinance. In addition, Ernest relies on *Friedman*, 219 Ga. at 159 (3) (b), and *Waldrop v. Stratton & McLendon, Inc.*, 230 Ga. 709, 710 (1) (198 SE2d 883) (1973), in support of its proposition that the GMC was required to be incorporated by reference in the minutes. We note that these cases more closely reflect the facts of this case, as they address the proper adoption of a city ordinance. Nevertheless, it can be inferred from both cases that the threshold analysis requires consideration of the controlling language in a city charter. See *Waldrop*, 230 Ga. at 710 (1) (noting that "in the absence of statutory or charter provisions to the contrary," the analysis turns to whether the ordinance was properly incorporated by reference in the meeting minutes); *Friedman*, 219 Ga. at 159 (3) (b) (expressly noting that neither the city charter nor any other statute required the appearance of an ordinance in the minutes as a prerequisite to its validity). As such, we find these cases unpersuasive.

Without reviewing the charter, the trial court could not determine what process the council was required to follow in order to properly adopt the GMC. See *Toomey,*

211 Ga. at 816-817 (1). We therefore reverse the trial court's judgment that the GMC was improperly adopted and thus void on this ground.

3. The City next argues we should not affirm the trial court's declaration that the GMC was void on "right for any reason" grounds. Specifically, the City argues that Ernest was not entitled to summary judgment on its claims for declaratory judgment invoking the ZPL because that act does not apply to requests for land development permits. However, in its order, the trial court did not address the ZPL at all in its determination that the GMC was void, despite the fact that Ernest raised this issue both in its petition and its brief on its motion for partial summary judgment.[5] Thus, in essence, the City invites us to find that the trial court's judgment was *wrong* for this additional reason. We decline to do so.

As we have explained,

> when this Court reviews a decision of a trial court on a motion for summary judgment, it sits as a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court.

---

[5] Although the trial court stated in its order that the denial of the building permits was grounded in zoning and was a zoning decision, this bare conclusion is not supported by an analysis of the ZPL or the relevant case law. Moreover, this statement appears in the portion of the order addressing whether there is an actual controversy to support Ernest's claim for declaratory judgment. Nowhere in the portion of the order concerning the validity of the GMC does the trial court incorporate the ZPL.

11

> And although in certain instances an appellate court can review a record and determine that a summary judgment ruling was right for some reason other than that given by the trial court, an appellate court should not consider whether the trial court was "wrong for any reason."

(Citation and punctuation omitted.) *Piedmont Hosp., Inc. v. D. M.*, 335 Ga. App. 442, 448-449 (3) (779 SE2d 36) (2015).

Because the trial court did not reach the issue of whether the adoption of the GMC violated the hearing and notice requirements set forth in the ZPL, this issue is beyond the proper scope of our appellate review. Id. at 449. We therefore vacate the trial court's order, and remand the case for consideration of this issue.

4. Having addressed Ernest's declaratory judgment claims, we turn to Ernest's mandamus claims. The City contends that Ernest lacked standing to challenge the denial of its application for the permit and site plan approval by writ of mandamus because it was required to file a petition for writ of certiorari. We agree.[6]

At the outset, we note that there is some confusion as to whether Ernest challenges the City's denial of its application on the merits or only the City's

---

[6] Ernest's claims for declaratory judgment are not precluded on this ground because they challenge the validity of the GMC. See OCGA § 9-4-7 (b); compare *Riverdale Land Group, LLC v. Clayton County*, 354 Ga. App. 1, 9-10 (2) (840 SE2d 132) (2020) (*constitutional* challenges to zoning ordinances barred where petitioner was required, but failed, to seek judicial review by writ of certiorari).

authority to so deny based on the GMC's purported invalidity. Ernest takes the position that it challenged only the validity of the GMC, and not the denial of its application and permits on an ad hoc basis. And, in its order, the trial court noted that Ernest "has not appealed the decision to not issue a Site Plan Approval and Land Development Permit." Yet, the trial court went on to address whether the City's decision was quasi-judicial, and thus whether Ernest should have brought its action as a petition for certiorari, ultimately concluding that the City's decision was administrative in nature. Notably, in its complaint, Ernest's claims for declaratory judgment are asserted concurrently as claims for mandamus to allow the unrestricted use of the property. Moreover, in an amended complaint, Ernest asserted a mandamus claim to compel the issuance of building permits. As such, we address the City's claim that Ernest was required to seek judicial review by writ of certiorari.

Pursuant to OCGA § 5-4-1 (a), "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers[.]" Therefore, "certiorari is not an appropriate remedy to review or obtain relief from the judgment, decision or action of an inferior judicatory or body rendered in the exercise of legislative, executive, or ministerial functions, as opposed to judicial or quasi-judicial powers." (Citation omitted.) *City of Cumming v. Flowers*,

13

300 Ga. 820, 823 (3) (797 SE2d 846) (2017). Our first step, then, is to determine whether the City's decision to deny the permits and site plans was quasi-judicial in nature. See id. And, if we conclude that Ernest had a remedy by certiorari, its claims for mandamus must fail. Id. at 825 (4); *Riverdale Land Group, LLC v. Clayton County*, 354 Ga. App. 1, 3 (1) (840 SE2d 132) (2020).

> As we have explained, there are three characteristics of a quasi-judicial act:

> First, a quasi-judicial act occurs in situations when all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure. Second, a quasi-judicial act requires a decisional process that is judicial in nature, involving an ascertainment of the relevant facts from evidence presented and an application of preexisting legal standards to those facts. Third, a quasi-judicial act reviewable by writ of certiorari is one that is final, binding, and conclusive of the rights of the interested parties. . . . [G]enerally speaking, an administrative determination is adjudicative in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect.

(Citations omitted.) *Riverdale Land Group, LLC*, 354 Ga. App. at 3-4 (1).

Turning to the applicable provisions of the GMC, pursuant to Article XIII, section (2) (B) of the 2010 GMC, regarding site plan approval:

> All land development activities other than residential one and two family structures, regardless of the zoning district, must present a Site Plan of such development to the Building and Zoning Department and City Engineer for review prior to the issuance of any land development

14

permits. The Site Plan is also reviewed by the Planning and Zoning Board and forwarded to the City Council for approval once all comments are addressed.

Section 8 of that Article provides:

The Site Plan approval process is intended to provide the general public, Planning and Zoning Board and City Council with information pertinent to how a new development will affect the surrounding area and the city as a whole. Site Plan approval does not constitute approval of any other zoning action or permit. . . . Upon submittal of the Site Plan, the Building and Zoning Department will review the Site Plan for noticeable discrepancies and determine if there is a need to apply for other zoning actions. The Site Plan is then forwarded to the City Engineer. Once the engineer has submitted comments to the Building and Zoning Department, the Site Plan shall be placed on the agenda of the next Planning and Zoning Board meeting. Until the applicant addresses all of staff's comments and the Site Plan is satisfactory, the City Council will not approve the plan. However, once the first public meeting is held before the Planning and Zoning Board, Site Plan approval may commence at any scheduled meeting of the City Council.

Article VII, section 7 of the 2010 GMC concerns land development permits, and

provides, in pertinent part:

Every Application for a Land Development Permit, and all Plan(s), Plat(s), construction drawing(s) and all other information accompanying the Application, shall be officially evaluated by the following specified City officials and agencies to determine compliance with the terms and conditions of this Ordinance and to identify potential public service burdens. Every Application shall be officially approved or disapproved by each responsible official review agency or individual and written notice of such approval or disapproval shall be provided to the Applicant by an authorized City employee.

Pursuant to section 8 of Article VII, the mayor and city council are included in the list of city agencies and employees that must pass on a proposed permit for a project of the type at issue here. The GMC further requires notice to the public and public hearings before the council prior to the approval of the application. 2010 GMC, Art. XIII, §§ 5, 6. Additionally, the GMC sets forth criteria the city council will consult in making any zoning decision, such as the impact of a proposed use on the density patterns of the neighborhood, and adverse impacts on adjacent properties, including increased traffic and noise. 2010 GMC, Art. XIII, § 10.

A review of the minutes from the public hearing on Ernest's application reflects that both parties, Ernest, as well as the City, were permitted to present their arguments, and that the council also considered concerns regarding traffic congestion and increased density raised by members of the public, before ultimately denying the application.

Thus, the council's denial of the application met all three elements of the test set forth in *Riverdale Land Group, LLC*. The parties received notice and a hearing, and were afforded the opportunity to present evidence. *Riverdale Land Group, LLC*, 354 Ga. App. at 3 (1). The decision-making process of the council involved an evaluation of the relevant facts from the evidence presented and the application of

standards as set forth in the GMC. Id. at 3-4 (1). The denial was effective immediately, and was "final, binding, and conclusive" of Ernest's rights to develop the town homes on its property. (Citation and punctuation omitted.) Id. at 4 (1). We therefore conclude that the denial of the application was a quasi-judicial act.

Accordingly, Ernest was required to challenge the denial of its application by writ of certiorari, pursuant to OCGA § 5-4-1 et seq. *Riverdale Land Group, LLC*, 354 Ga. App. at 7 (1); see also *Flowers*, 300 Ga. at 834 (7). "And because certiorari was available, mandamus was not."[7] *Riverdale Land Group, LLC*, 354 Ga. App. at 7 (1). The trial court thus erred in denying summary judgment to the City as to Ernest's mandamus claims, and we therefore reverse.

5. The City next contends that the trial court erred by denying its motion for summary judgment as to Ernest's claim under 42 USC § 1983 because Ernest failed to assert a constitutional deprivation and proffered no evidence of any damages suffered as a result of any such violation. However, the trial court's order is silent as

---

[7] In addition to being barred by the City's sovereign immunity, as discussed in Division 1, Ernest's claim for injunctive relief is also precluded by its failure to seek judicial review by writ of certiorari. Pursuant to OCGA § 9-5-1, injunctive relief is available only when "no adequate remedy is provided at law." A petition for writ of certiorari provided such a remedy. *Flowers*, 300 Ga. at 834-835 (8).

to this claim. In the absence of a ruling on this claim, we do not consider it on appeal. *City of Atlanta v. Hotels.com*, 289 Ga. 323, 328 (4), n. 5 (710 SE2d 766) (2011).

6. In light of the rulings in Divisions 1-5 above, we do not reach the City's remaining claims that the trial court erred by granting Ernest a permanent injunction, and denying its motion for summary judgment on Ernest's mandamus claims.

In summary, we affirm the trial court's judgment that Ernest's claims for declaratory judgment were not barred by sovereign immunity; however, we reverse its judgment with regard to Ernest's claim for permanent injunction on this ground. We reverse the trial court's conclusion that the GMC was void for improper adoption; however, we vacate the order and remand the case so that the trial court may consider the application of the ZPL to Ernest's claims for declaratory judgment. We reverse the trial court's judgment regarding Ernest's mandamus claims. Because the trial court did not rule on Ernest's claim for damages pursuant to 42 USC § 1983, we decline to review that issue on appeal.

*Judgment affirmed in part; reversed in part; vacated in part; and case remanded with direction. Reese, P. J., and Colvin, J., concur.*

18