## 41308. MAYOR & ALDERMEN OF THE CITY OF SAVANNAH et al. v. RAUERS et al.

### (324 SE2d 173)

HILL, Chief Justice.

In this zoning case, the trial court found single family residential zoning in Savannah an unconstitutional deprivation of the owners' property and set the zoning aside. The city appeals.

1. At the outset, the city urges that the trial court erred in overruling its motion in limine to exclude evidence offered by the property owners in court which was not presented to the city council. The city urges that the court should decide the owners' constitutional challenge to the zoning ordinance on the basis of the evidence before the city council; i.e., no trial de novo should be permitted. Although the argument has merit, it should be addressed to the General Assembly. We do not adopt it because the city is urging in effect that there be an "appeal" from the city council to the superior court, and the General Assembly has not provided for such a procedure. See *Ga. Pub. Serv. Comm. v. Gen. Tel. Co.*, 227 Ga. 727, 728 (182 SE2d 793) (1971); *Allied Chemical Corp. v. Ga. Power Co.*, 236 Ga. 548, 552 (224 SE2d 396) (1976); *Village Centers, Inc. v. DeKalb County*, 248 Ga. 177, 179 (281 SE2d 522) (1981). Instead, the zoning authority is acting in a legislative capacity, and the constitutionality of its action in denying rezoning (adhering to the existing zoning ordinance) is being challenged in court. *Barrett v. Hamby*, 235 Ga. 262, 265 (219 SE2d 399) (1975). Moreover, were we to adopt the city's argument, zoning authorities throughout the state would be required to allow cross-examination of witnesses and would have to record the testimony and have it transcribed. This we decline to require.

2. Next, the city urges us to set a minimum level of profit which may be used by zoning authorities to determine that rezoning is not constitutionally required. Due to the wide range of variables to be considered in such cases, see *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322, 323-324 (232 SE2d 830) (1977), and the wide range of values customarily produced by opinion testimony, focusing on a fixed amount of profit does not provide a manageable rule. As stated in *Guhl*, "[t]he validity of each zoning ordinance must be determined on the facts applicable to the particular case. . . ."

3. We therefore turn to the facts of this case. John Rauers bought a 67-acre tract in the City of Savannah in 1952, and developed all but the 5 acres involved here as single family residences in a subdivision known as Magnolia Park. (The 5 acres were never part of the subdivision, however.) The last subdivision lot was sold in about 1964 or 1965, although 1 lot remains unsold. The only offer Rauers has ever received on the 5 acres now in question was in 1978, but was contingent on commercial rezoning and never came to fruition.

Rauers and his partner, Hugh Armstrong, now seek to rezone the 5 acres to a multi-family use as they claim single family development would not be practical. They proposed a Planned Unit Development (PUD), with 16 units to the acre for the site. (Under a PUD, rather than a multi-family zoning, the city can incorporate controls into the plan, such as, for example, requiring buffer zones. The PUD plan is then recorded, thereby protecting the city and the public as well as the purchasers in the development.) The Metropolitan Planning Commission approved the change to PUD M-16 zoning but the city council denied it.

The 5-acre tract is bordered on two sides by Magnolia Park subdivision, which contains homes valued up to $125,000 to $150,000. The northern border is formed by DeRenne Avenue, which is a 4-lane traffic artery. Across DeRenne is a power substation and a high school as well as more vacant land. Access to the proposed development would be on DeRenne so there would be no traffic impact on the residential subdivision.

The western boundary is formed by the Casey Canal and is significant because it causes the main development problem with the land; that is, that it is very low, lying not only in the one hundred-year flood plain, but also partly in the canal floodway. The elevations range from 6-9 feet above mean sea level.

The owners contend that in order to make the 5 acres developable under these conditions streets must be raised and a retention pond created. Also, of course, either the land must be filled in to a buildable height, which one witness said would add $30,000 to $90,000 in development costs depending on the amount of fill used and would likely kill all the foliage on the property, or the homes must be put on stilts. The owners argue that if they created the 12 residential lots allowable under the current zoning and sold them, the lots would sell for around $13,000; with 1200 square foot homes, about $60-65,000. Neither selling price in their opinion would make the costs of development, along with the risk factor and present high interest rates, practicable or profitable. Under the PUD zoning, the 60 to 84 allowable units could be clustered to get maximum use of the filled in space while leaving some space natural in order to retain foliage. This, they contend, would not only enhance the development itself, but also the surrounding area including Magnolia Park, which would be protected under the PUD regulations by a 50-foot buffer.

The city, on the other hand, presented as witnesses an architect who has lived in Magnolia Park subdivision since 1956 and who served on the Metropolitan Planning Commission for 5 or 6 years, and the former city engineer who had also previously lived in Magnolia Park. The architect's opinion was that residential development on raised pilings would be feasible and profitable and would protect the

residential character of the neighborhood. He also presented pictures of raised homes selling on the islands around Savannah which he said would be marketable in the city. The only example of the use of stilts in the city, however, is one apartment project. This witness recommended against filling in with dirt, which would kill all the foliage.

The former city engineer also was of the opinion that minimal filling under houses and on the streets in order to keep cars out of high water or building the homes on piers or pilings in order to reduce tree loss was feasible. Under his development scheme, he projected a cost of $9,640 in development costs, including a retention pond, for each of the 12 lots possible in the 5-acre tract, thus projecting a profitable use of this property under the present zoning. He also testified that other areas of Magnolia Park are in the flood plain and have been developed as single family residences.

In holding the existing zoning unconstitutional the trial court analyzed the evidence under the guidelines set out in *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322, 323-24, supra, including the existing uses and zoning of the nearby property, the suitability of the property for the zoned purpose, the length of time the property has been vacant, the threat to the public health, safety and morals if rezoned, the extent to which the value of the property is diminished by the present zoning, and the balance between the hardship on the property owner and the benefit to the public in not rezoning.

Considering the low elevation of the property and the cost thereby created in developing and marketing the property, the trial court concluded by finding that the owners have proved that the existing zoning results in relatively little gain to the public and inflicts serious injury and loss upon them as owners, that the city failed to justify the existing zoning, that the land is worthless as presently zoned, and that the existing zoning is therefore confiscatory and void. We agree. *Barrett v. Hamby*; *Guhl v. Holcomb Bridge Rd. Corp.*, supra. The evidence was in conflict and the trial court was not bound to accept the opinions as to value offered by the opponents of the rezoning.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1985.

*James B. Blackburn, Stanley E. Harris, Jr.*, for appellants.
*Phillip R. McCorkle*, for appellees.