305 Ga. 545
FINAL COPY

S18G0524. HOUSING AUTHORITY OF
THE CITY OF AUGUSTA v. GOULD.

BLACKWELL, Justice.

According to our precedents, the superior courts have jurisdiction to review by writ of certiorari under OCGA § 5-4-1 not only the judicial decisions of inferior courts, but also the quasi-judicial decisions of other instrumentalities and officers of state and local government. In Gould v. Housing Auth. of the City of Augusta, 343 Ga. App. 761 (808 SE2d 109) (2017), a divided panel of the Court of Appeals held that the certiorari jurisdiction of the superior courts extends to decisions of municipal housing authorities discontinuing the provision of housing assistance under Section 8 of the Housing Act of 1937.[1] We brought the case up to consider whether the writ of certiorari reaches so far, and we conclude that it does not. For the reasons that follow, we reverse the judgment of the Court of Appeals.

---

[1] See 42 USC § 1437f.

1. Under Section 8, the United States Department of Housing and Urban Development manages a program to provide housing assistance to qualified low-income families. The Department contracts with state and local public housing agencies to administer the program in the areas that they serve, and the Department makes federal funding available to participating agencies, which may use the funding to provide housing assistance in the form of vouchers. The Housing Act directs the Department to promulgate regulations to govern the administration of the program, and the Department has done so. Among other things, these regulations require a participating public housing agency to adopt and adhere to a written administrative plan that establishes policies for its administration of the program. See 24 CFR § 982.54 (a).

In Goldberg v. Kelly, 397 U. S. 254 (90 SCt 1011, 25 LE2d 287) (1970), the United States Supreme Court held that, when a state or local government determines to discontinue the provision of welfare benefits to an individual recipient, the Due Process Clause of the Fourteenth Amendment requires the government to give notice and afford the recipient a meaningful opportunity to be heard before the benefits are discontinued. 397 U. S. at 261 (I). In particular, the government must give the recipient "timely and adequate notice detailing the reasons for a proposed termination," id. at 267-268 (II); it must allow an

evidentiary hearing at which the recipient has "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally," id. at 268 (II); it must permit the recipient "to retain an attorney if he so desires," id. at 270 (II); and the issues raised at the hearing must be resolved by a decision maker who did not participate in the initial determination to discontinue benefits, who must rest his decision "solely on the legal rules and evidence adduced at the hearing," and who must state the reasons for his decision, id. at 271 (II). The Supreme Court cautioned, however, that the hearing that <u>Goldberg</u> contemplated "need not take the form of a judicial or quasi-judicial trial." Id. at 266 (II). No one in this case disputes that <u>Goldberg</u> applies to the discontinuation of Section 8 housing assistance. See id. at 264 (I) (characterizing welfare benefits as those that provide "the means to obtain essential food, clothing, *housing*, and medical care" (emphasis supplied)). See also <u>Clark v. Alexander</u>, 85 F3d 146, 150 (4th Cir. 1996).

Consistent with <u>Goldberg</u>, the Housing Act directs the Department to issue regulations to require public housing agencies participating in the Section 8 housing assistance program to

>  establish and implement an administrative grievance procedure under which tenants will—

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request . . . ;

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 USC § 1437d (k). And pursuant to that direction, the Department has promulgated regulations that require a participating agency to make provisions in its written administrative plan for "[i]nformal hearing procedures." 24 CFR § 982.54 (d) (13). According to the regulations, a participating agency must "give a participant family an opportunity for an informal hearing" when the agency, among other things, has determined to "terminate assistance for a participant family because of the family's action or failure to act." 24 CFR § 982.555 (a) (1) (iv). The agency must give the family notice of the grounds for the determination to discontinue assistance and that the family may request a hearing. 24 CFR § 982.555 (c) (2). And if the family requests an informal hearing, the regulations require the agency to give the family "the opportunity to examine before the . . . hearing any [agency] documents that are directly

relevant to the hearing," 24 CFR § 982.555 (e) (2) (i); the agency must permit the family to "be represented by a lawyer or other representative," 24 CFR § 982.555 (e) (3); the hearing must be conducted by someone "other than a person who made or approved the decision under review or a subordinate of this person," 24 CFR § 982.555 (e) (4) (i); "[t]he [agency] and the family must be given the opportunity to present evidence[ ] and may question any witnesses," 24 CFR § 982.555 (e) (5); and the hearing officer must "issue a written decision, stating briefly the reasons for the decision," with any "[f]actual determinations relating to the individual circumstances of the family . . . based on a preponderance of the evidence presented at the hearing." 24 CFR § 982.555 (e) (6).

The Housing Authority of the City of Augusta administers the Section 8 housing assistance program in Augusta-Richmond County, and it issued a Section 8 voucher to Carrie Gould, which Gould used to rent a home. The opinion of the Court of Appeals explains what happened next, at least according to the pleadings and limited record in this case:

> After an annual inspection, the housing authority determined that Gould's residence did not meet the housing quality standards required under federal regulations, and it gave notice to Gould that the vouchers to her landlord would be terminated. Gould then sought approval from the housing authority to move to a new

residence. Pursuant to the housing authority's administrative plan, before Gould could be issued new vouchers for a new residence, the housing authority required the submission of a "zero balance letter" from Gould's current landlord stating that Gould did not owe the landlord any money for rent or damages. The landlord refused to issue the letter.

The housing authority then terminated Gould's participation in the Section 8 program for her failure to comply with [her] family obligations and submit the required documents. The housing authority informed Gould of her right to contest the decision under the housing authority's administrative plan. Gould requested an informal hearing and was represented by counsel who recorded the hearing, although neither a copy of the recording nor a transcript of the informal hearing was included in the record on appeal.

Gould, 343 Ga. App. at 762 (citation omitted).[2] In February 2016, the hearing officer issued his written decision, upholding the determination to discontinue housing assistance to Gould. The hearing officer found that, at the hearing, Gould acknowledged that her landlord had made a damages claim against her, that she, in fact, owed some money for damages, and that the damages claim remained unresolved. See 24 CFR §§ 982.404 (b) (1) (iii) ("family is responsible for a breach of [housing quality standards] that is caused by . . . [a]ny member of the household or guest damag[ing] the dwelling unit or

---

[2] Not only does the record omit any recording or transcript of the informal hearing, but it also does not contain a complete and properly authenticated copy of the written administrative plan adopted by the Housing Authority and pursuant to which the informal hearing was conducted.

premises") and 982.552 (c) (1) (i) (violations of "family obligations under the program" are grounds for termination of assistance).

In March 2016, Gould filed a petition for a writ of certiorari in the Superior Court of Richmond County, seeking judicial review of the decision of the hearing officer. Gould asserted in her petition that the evidence adduced at her informal hearing failed to show by a preponderance—and under 24 CFR § 982.555 (e) (6), could not sustain the findings of the hearing officer—that she owes any amounts to her landlord for damages. Contrary to the findings of the hearing officer, Gould alleged that the only evidence of indebtedness presented at the hearing was a letter from an agent of her landlord, and she argued that the letter is unreliable hearsay and not sufficiently probative to establish any debt by a preponderance. Gould asked the superior court to either reverse the decision to terminate her housing assistance or "remand this matter back to the [Housing Authority] for a new hearing."

The superior court issued a writ, and the writ and petition were served upon the Housing Authority. In response, the Housing Authority filed a motion to vacate the writ and dismiss the petition. The Housing Authority argued that an informal hearing on the termination of Section 8 housing assistance as required by Goldberg and the federal regulations is not a quasi-judicial

proceeding, and the decision of the hearing officer was not an exercise of quasi-judicial power. For that reason, the Housing Authority said, the decision is not within the scope of the certiorari jurisdiction of the superior court.

Following a hearing, the superior court granted the motion, vacated the writ, and dismissed the petition in September 2016. In its order, the superior court concluded that it was without "jurisdiction to review the results of the informal hearing pursuant to a petition for certiorari filed under OCGA § 5-4-1 as the confirmation of [Gould]'s termination was administrative in nature and not quasi-judicial or judicial." The superior court reasoned that a proceeding is judicial or quasi-judicial only to the extent that "the parties at interest had a right under the law to demand a trial in accordance with judicial procedure," but the informal hearing process under Section 8, the superior court said, does not involve "judicial forms of procedure." Among other things, the superior court noted that a hearing officer does not have the power to swear witnesses, to compel the presence of witnesses, or to issue subpoenas for discovery or attendance at the hearing, and the participant whose assistance is to be discontinued has a right to be represented not only by a lawyer, but also by "a friend or a family member." In addition, the superior court observed that a public housing agency is not strictly bound by the decision of the hearing

officer, noting that federal regulations supply several grounds for the agency to disregard the decision.

Gould appealed, and the Court of Appeals reversed in a split decision. Writing for the majority, Presiding Judge McFadden looked to the federal regulations governing the administration of the Section 8 housing assistance program to identify the process to which Gould was entitled as of right, see 343 Ga. App. at 763-764, and he reasoned:

> The record demonstrates that Gould had the right to proper notice and a fair hearing, that she was afforded the opportunity to present evidence under judicial forms of procedure, and that the hearing officer made his decision after determining the facts under a preponderance of the evidence standard and applying the appropriate law. Thus the hearing officer's decision was the result of quasi-judicial action.

Id. at 764. Because the decision was quasi-judicial, the majority concluded, it was within the certiorari jurisdiction of the superior court. The majority found it "irrelevant" that a public housing agency may in some circumstances determine that it is not bound by the decision of a hearing officer, noting the absence of any such determination in this case. Id. at 765. Joined by Judges Branch, McMillian, and Mercier, then-Judge Bethel dissented. Judge Bethel noted that a public housing agency is not strictly bound by the decision of a hearing officer, and he concluded that "the fact that the final act in this process

occurs when [the Housing Authority] is satisfied that [the] hearing officer's decision is binding illustrates the administrative nature of the informal hearing." Id. at 769-770 (Bethel, J., dissenting). Like the superior court, Judge Bethel also noted the informality of the hearing procedures, which, he explained, are designed to allow recipients of housing assistance "to contest administrative decisions unencumbered by the legal technicalities of judicial procedures." Id. at 770. The Housing Authority filed a petition for a writ of certiorari in this Court, and we granted the writ to consider the important question presented in this case.

2. "The writ of certiorari [in the superior court] shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers . . . ." OCGA § 5-4-1 (a). Long settled precedents of this Court establish that the writ runs not only to judicial proceedings in inferior courts, but also to quasi-judicial proceedings before agencies of local government. See City of Cumming v. Flowers, 300 Ga. 820, 827 (5) (a) (797 SE2d 846) (2017) ("[F]or generations this Court has held that judicial and quasi-judicial decisions made by city and county governing authorities may be appealed to the superior court by certiorari . . . ."). As we explained in South View Cemetery Assn. v. Hailey, 199 Ga. 478, 480 (2) (34 SE2d 863) (1945):

The performance of judicial acts under authority conferred upon courts is judicial in character, while the performance of judicial acts under authority conferred upon other persons, boards, or tribunals is quasi-judicial. Just as the authorized acts and functions of courts may or may not be judicial in character, so the authorized acts and functions of other officers or bodies may or may not be quasi-judicial in character, according to whether or not the character and nature of the authorized function and the authorized manner and method of its performance are made so by competent authority.

If a local government exercises a quasi-judicial power, its acts generally are subject to review by writ of certiorari in a superior court. If it exercises, however, only an executive or administrative power, the writ of certiorari will not lie. See Flowers, 300 Ga. at 823 (3).

We have acknowledged that "[t]he determination of what is a ministerial or administrative duty and what is a judicial function is often a matter of extreme difficulty." City Council of Augusta v. Loftis, 156 Ga. 77, 82 (1) (118 SE 666) (1923). Indeed, what distinguishes a quasi-judicial act from an administrative one is not readily susceptible of terse definition. Even so, our precedents reveal three essential characteristics of a quasi-judicial act. First, a quasi-judicial act is one as to which "all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure." South View, 199 Ga. at 481 (4). See also

Goddard v. City of Albany, 285 Ga. 882, 883 (1) (684 SE2d 635) (2009) ("The test is whether the parties at interest had a right under the law to demand a trial in accordance with judicial procedure." (citation and punctuation omitted)). Second, a quasi-judicial act is one that requires a decisional process that is judicial in nature, involving an ascertainment of the relevant facts from evidence presented and an application of preexisting legal standards to those facts. See Jackson v. Spalding County, 265 Ga. 792, 794 (2) (462 SE2d 361) (1995) ("This decision-making process is akin to a judicial act: the board determines the facts and applies the ordinance's legal standards to them."), disapproved on other grounds by Flowers, 300 Ga. at 820. See also Southeastern Greyhound Lines v. Ga. Public Svc. Comm., 181 Ga. 75, 80 (181 SE 834) (1935) ("It is one thing to provide that a thing may be done if it is made to appear that under the law a certain situation exists; it is another thing to provide that a thing may be done if in the opinion of a named party a certain situation exists. The one is justiciable; the other is administrative."). Third, a quasi-judicial decision reviewable by writ of certiorari is one that is final, binding, and conclusive of the rights of the interested parties. See City of Atlanta v. Blackman Health Resort, 153 Ga. 499, 508 (6) (113 SE 545) (1922) ("If these proceedings were judicial or quasi-judicial, then the applicant was

bound by the previous adverse judgments of that body. The rulings and decisions of certain executive or administrative officers, acting in the discharge of duties involving judicial or quasi-judicial action on their part, are accorded the effect of res judicata so far as to make them binding and conclusive unless appealed from or directly brought before the courts for review."). See also Loftis, 156 Ga. at 83 (1) ("In reviewing the acts of the inspector, this board acts only in an administrative or ministerial capacity. The party aggrieved by a ruling of the inspector would have to resort to this ministerial remedy before he would have a standing in a court of equity; but such resort to this remedy is not one to a judicial tribunal by whose judgment he will be bound."); Starnes v. Fulton County School Dist., 233 Ga. App. 182, 185 (503 SE2d 665) (1998) ("[F]inality of the pension board's decision under the local law and pension board bylaws is a prerequisite to appeal by certiorari."). We now turn to consider whether the decision in this case of the hearing officer following an informal hearing bears these indicia of a quasi-judicial act.[3]

---

[3] As we do so, we note some threshold reasons to be skeptical that such a decision is within the certiorari jurisdiction of the superior courts. Although it was not speaking in terms of reviewability by writ of certiorari (or dealing with Georgia law), the United States Supreme Court in Goldberg said quite plainly that the constitutionally required hearing "need not take the form of a judicial or quasi-judicial trial." 397 U. S. at 266 (II). Goldberg has been the law for nearly fifty years, and yet, the parties to this case have been unable to direct us to (and we have not found) a single Georgia precedent in which it was held that a

3. The majority in the Court of Appeals looked to the procedures and process established by the federal regulations that govern Section 8 housing assistance and decided that those procedures and process satisfied the first two indicia of a quasi-judicial act. In doing so, the majority appears to have assumed that Gould had a right to insist upon the procedures and process established by the regulations, but for reasons we will discuss, it is not obvious to us that this assumption is sound. To be sure, it is perfectly clear that Gould was entitled by the Fourteenth Amendment's guarantee of due process to insist upon a Goldberg hearing as a matter of right. And so, Gould certainly was

hearing under Goldberg, the federal regulations governing Section 8 housing assistance, or comparable federal regulations concerning other forms of public assistance was sufficiently quasi-judicial to come within the certiorari jurisdiction. We also note that federal courts in Georgia routinely entertain lawsuits under 42 USC § 1983 alleging denials of procedural due process and arising from informal hearings in Section 8 cases. See, e.g., Goodman v. Housing Auth. of DeKalb County, Case No. 1:17-CV-504-TWT, 2018 WL 3972364 (N.D. Ga. Aug. 20, 2018); Binns v. City of Marietta Housing Assistance Program, Case No. 1:07-CV-0070-RWS, 2010 WL 1138453 (N.D. Ga. Mar. 22, 2010); Jackson v. Jacobs, 971 FSupp. 560 (N.D. Ga. 1997). But under Eleventh Circuit precedent, if the state affords a remedy adequate to correct alleged procedural deficiencies, no procedural due process claim can be stated under Section 1983, and the writ of certiorari under Georgia law is "generally an adequate state remedy." Cotton v. Jackson, 216 F3d 1328, 1331 (11th Cir. 2000). So, if the writ of certiorari lies to review decisions after an informal hearing in Section 8 cases, the federal courts ought not have to entertain suits under Section 1983 arising from such decisions.

All that, of course, proves nothing definitively. A question is not decided until it is decided, and it cannot be decided until it is presented. Before this case, the reviewability of Section 8 housing assistance decisions by writ of certiorari does not appear to have been presented to a Georgia appellate court. But the fact that it evidently has occurred to no one in fifty years that the writ of certiorari might lie is some reason to be skeptical.

entitled to the forms of procedure and the decisional process that <u>Goldberg</u> demands. The majority below, however, did not consider whether a <u>Goldberg</u> hearing involves "judicial forms of procedure" or a decisional process that is properly characterized as judicial in nature. Again, the majority only examined the procedures and process established by the Section 8 federal regulations.

This error would not matter if a <u>Goldberg</u> hearing and a hearing under the regulations were essentially the same. But they are not. Indeed, the regulations require procedures that <u>Goldberg</u> does not, and the procedures necessary to comply with <u>Goldberg</u> may not be enough to discharge the regulatory requirements. For instance, as Gould conceded at oral argument in this Court, the regulations afforded her an opportunity to review Housing Authority documents and records prior to the hearing, see 24 CFR § 982.555 (e) (2) (i), but <u>Goldberg</u> says nothing about discovery. The regulations would have permitted Gould to be represented by someone other than a lawyer, see 24 CFR § 982.555 (e) (3) — something that may not have mattered in Gould's case (she had counsel), but might be important to recipients of housing assistance who cannot procure the services of a lawyer — but <u>Goldberg</u> only speaks of the opportunity to be represented by counsel. See 397 U. S. at 270 (II).

Moreover, with respect to the decisional process, the regulations require the hearing officer to base any factual determinations about the circumstances of the family whose housing assistance is at issue upon "a preponderance of the evidence presented at the hearing." 24 CFR § 982.555 (e) (6). On the other hand, Goldberg requires that the hearing officer rest his decision "solely on the legal rules and evidence adduced at the hearing," 397 U. S. at 271 (II), but Goldberg says nothing about the precise standard of proof against which the evidence must be assessed, other than its comment that the only function of the informal hearing is "to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." Id. at 267 (II).

It is not immediately evident to us whether these distinctions ultimately would make a difference in whether the decision of the hearing officer is properly characterized as quasi-judicial. The Court of Appeals did not address that question, nor have the parties briefed it in this Court. To be sure, it would not matter at all if Gould was as entitled as a matter of right to the regulatory procedures and decisional process as she was to the constitutionally required procedures and process under Goldberg. But whether Gould has an *individual*

and *legally enforceable right* to insist upon the procedures and process required by the regulations turns out to be a difficult question.

In a recent Eleventh Circuit decision, Judge William Pryor wrote a concurring opinion in which he questioned whether, for purposes of a lawsuit under 42 USC § 1983, a recipient of Section 8 housing assistance has an individual federal *right* to the preponderance-of-the-evidence standard of proof that the regulations establish. See Yarbrough v. Decatur Housing Auth., 905 F3d 1222, 1226-1227 (11th Cir. 2018) (William Pryor, J., concurring). Judge Pryor noted that, although regulations may help to define the content of a federal right that is conferred by statute, id. at 1227 (A), the United States Supreme Court generally has held that regulations may "'not create a right that Congress has not.'" Id. at 1228 (A) (quoting Alexander v. Sandoval, 532 U. S. 275 (121 SCt 1511, 149 LE2d 517) (2001)). Looking to the Housing Act, Judge Pryor noted that 42 USC § 1437d (k) calls for informal hearings under Section 8, but it "does not lay any duty on any state actor. Instead, it lays a duty on the *Secretary* [of Housing and Urban Development] . . . to impose obligations on state actors." Id. (emphasis in original). Judge Pryor concluded:

> A congressional instruction to impose a duty on a state actor is not itself an act of imposing a duty on the states. In declining to impose a duty directly on public housing authorities in the text of

the Housing Act, Congress also declined to create any statutory right to a termination hearing that could be enforced through section 1983. So the corresponding regulation, 24 CFR § 982.555 (e) (6), defines the content of a statutory provision that creates no federal right, instead of fleshing out the content of a right conferred by Congress.

Id. (citation and punctuation omitted). Moreover, Judge Pryor said, even if 42 USC § 1437d (k) could be understood to create a right to a hearing, the statute itself says nothing of a preponderance standard of proof, and so, "it would not follow that the preponderance standard created by the applicable regulation merely further defines or fleshes out the content of that right." Id. (citations and punctuation omitted). Judge Pryor urged that prior decisions of the Eleventh Circuit recognizing an individual right to the preponderance standard in Section 8 cases "be overruled en banc." Id. at 1226.

The conclusions drawn by Judge Pryor in his concurring opinion strike us as more than plausible. They seem consistent with recent decisions of the United States Supreme Court about the way in which federal rights are created. See, e.g., <u>Armstrong v. Exceptional Child Center</u>, ___ U. S. ___ (IV) (135 SCt 1378, 191 LE2d 471) (2015) ("Section 30(A) [of the Medicaid Act] lacks the sort of rights-creating language needed to imply a private right of action. It is phrased as a directive to the federal agency charged with approving state

Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid." (citation omitted)). We note that Judge Pryor is not the first federal judge to raise concerns of this sort. See, e.g., Long v. District of Columbia Housing Auth., 166 FSupp.3d 16, 31 (IV) (A) (2) (D. D.C. 2016) (questioning "whether Congress intended, through the cited provisions of the Housing Act, to create a new substantive individual right for participants of the program . . . against termination of their assistance on grounds that violate the statute and its implementing regulations"). And we note as well that the Eleventh Circuit only a few weeks ago vacated the panel decision in Yarbrough and set the case for rehearing en banc. See Yarbrough v. Decatur Housing Auth., 914 F3d 1290 (11th Cir. 2019).

Even if Judge Pryor is correct, it does not necessarily follow that the individual and legally enforceable "right" that is essential to the characterization of a decision for purposes of the writ of certiorari under Georgia law necessarily must be (if it is derived from federal law) a right that would sustain a claim under Section 1983. But it is not apparent either why we would define "right" differently. In any event, the majority in the Court of Appeals did not consider whether Gould had an *individual* and *legally enforceable right* under federal law to insist upon the procedures and process

established by the Section 8 regulations, and the parties have not briefed that question in this Court. That is the proper starting point to assess whether a party is entitled to "judicial forms of procedure" and a decisional process that is judicial in nature — we must identify the procedures and process to which the party is entitled. The failure of the Court of Appeals to consider this threshold question would be reason enough for us to set aside the decision of the Court of Appeals and remand for further consideration of these difficult questions.

4. But we need not remand because it is apparent to us that the decision of the hearing officer in this case does not bear the third essential indicia of a quasi-judicial decision — that it be final, binding, and conclusive of the rights of the interested parties — regardless of whether we analyze the issues under the procedures and process established in the Section 8 regulations or only the procedures and process required under Goldberg, and regardless of whether the procedures and process to which Gould was entitled amounts to "judicial forms of procedure" and a decisional process of a judicial nature. The majority in the Court of Appeals did not consider the third indicia at all. But it is clear that a Goldberg hearing is not meant to be final, binding, and conclusive of the rights of the parties. Indeed, the United States Supreme Court explained in Goldberg that the informal hearing contemplated by that decision is only meant

to be an "initial determination," not a final and conclusive resolution. 397 U. S. at 267 (II).

Even assuming that the requirements that are set by regulation are the touchstone, it seems equally clear that a decision under the regulations is not final, binding, and conclusive of the rights of the parties for purposes of assessing certiorari jurisdiction under Georgia law. Gould points to regulations that provide in relevant part that a public housing agency is not bound by a decision of a hearing officer that "exceeds the authority of the person conducting the hearing under the [agency] hearing procedures," 24 CFR § 982.555 (f) (1), or that is "[c]ontrary to [federal] regulations or requirements, or otherwise contrary to federal, State, or local law," 24 CFR § 982.555 (f) (2), provisions that imply that an agency otherwise is bound by the decision of a hearing officer. Notwithstanding these provisions, we conclude for three reasons that they do not reflect a decision that is as final, binding, and conclusive as we would expect of a decision of a judicial nature. In the first place, the enumerated circumstances in which an agency is not bound strike us as broad.

Second, the regulations leave it to the agency itself to decide whether legal error exists sufficient for the agency to disregard the decision of the

hearing officer. It is true, of course, that even the judicial judgments of courts can be set aside for legal error, and that circumstance does not make the judgments any less judicial. But in those instances, the judgment ordinarily is effective and binding on all the parties until it is set aside (subject to the rules of supersedeas), it is reviewed judicially by an impartial court of review, and the parties have notice and an opportunity to be heard in the court of review. Here, on the other hand, it is for the public housing agency itself to decide whether it is bound by the decision, the recipient of housing assistance is entitled to no notice (until after the agency has decided) that the agency is considering whether it is bound, and the recipient has no entitlement to be heard by the agency on that question. See 24 CFR § 982.555 (f) (3) ("If the [agency] determines that it is not bound by a hearing decision, the [agency] must promptly notify the family of the determination, and of the reasons for the determination."). And the regulations make no provision for judicial review of a clearly non-judicial determination of an agency that it is not bound by the decision of a hearing officer. See Gould, 343 Ga. App. at 769 (Bethel, J., dissenting) ("The regulations do not define . . . what, if any, recourse a recipient has to contest such a finding."). In this respect, the decision of a hearing officer

under the Section 8 regulations does not appear to be as final, binding, and conclusive as we would expect of a decision that is judicial in nature.

Third, even to the extent that the regulations contemplate that a decision of a hearing officer becomes final and binding upon the agency if and when the agency determines that it properly is bound, the regulations provide no time limit for the agency to make that determination. Indeed, the Housing Authority in this case did not treat the decision as final, instead offering to set a second hearing for Gould before she filed her petition for a writ of certiorari. Moreover, there is no requirement that the agency notify the recipient of its determination to be bound — although it must "promptly" give notice of a determination that it is not bound, 24 CFR § 982.555 (f) (3) — and so, there may be no practical way for a recipient to ascertain whether the decision had, in fact, become final. And yet, the writ of certiorari under Georgia law presupposes that finality is readily ascertainable, inasmuch as it requires that the petition for the writ be filed "within 30 days after the final determination of the case." OCGA § 5-4-6 (a).

These are not the characteristics of a decision that is final, binding, and conclusive in the way that a judicial decision is.[4] Although the regulations purport to bind the agency to the hearing decision at least to some extent, one court has characterized the decision as effectively "advisory, in that the [agency] [is] the ultimate decision-maker with authority to overturn the [hearing officer]'s determination if it was contrary to [federal] regulations, federal, state, or local law." Rios v. Town of Huntington Housing Auth., 853 FSupp.2d 330, 343 (II) (C) (2) (E.D. N.Y. 2012). Another court has implied that the decision of a hearing officer is not meant to be a final and conclusive determination of the rights of the parties, noting that "the administrative scheme . . . contemplates [agencies] ignoring ultra vires decisions [to which they are not bound], rather than sending them back to [hearing officers] for reformulation." Tinnin v. Section 8 Program of City of White Plains, 706

---

[4] We also note that the Section 8 regulations say nothing about the decision of a hearing officer binding the recipient of housing assistance. With good reason. If the decision were binding and conclusive upon the recipient, it would be essential for the recipient to make her full and best case at the informal hearing, lest she be precluded by the doctrines of waiver, forfeiture, and res judicata from making it at some later point. But as the United States Supreme Court noted in Goldberg, "[t]he prosecution of an appeal demands a degree of security, awareness, tenacity, and ability which few dependent people have." 397 U. S. at 269 (II) n.16 (citation and punctuation omitted). And the regulations themselves contemplate — by their provision that a recipient may choose to be represented not only by a lawyer, but by a non-lawyer as well — that recipients of housing assistance cannot always count on finding legal representation for an informal hearing.

FSupp.2d 401, 407 (II) (B) (S.D. N.Y. 2010). And yet another court has rejected the notion that the decision of a hearing officer under the Section 8 regulations is final, at least for the purposes of res judicata. See Lawrence v. Town of Brookhaven Dept. of Housing, Case No. 07-CV-2243, 2007 WL 4591845 at *25 (II) (D) (E.D. N.Y. Dec. 26, 2007).

Whether or not Gould had a right to insist upon the procedures and process established by the Section 8 regulations or only the more limited procedures and process required under Goldberg — and whether or not Gould had a right to insist upon "judicial forms of procedure" and a decisional process that is judicial in nature — the decision of the hearing officer was not sufficiently final, binding, and conclusive of the rights of the parties to be properly characterized as a quasi-judicial decision for the purposes of Georgia certiorari law. The writ of certiorari does not lie for review of the hearing decision in this case, and the superior court was right to vacate the writ and dismiss the petition. The judgment of the Court of Appeals to the contrary is reversed.

Judgment reversed. Nahmias, P. J., Benham, Boggs, Warren, and Ellington, JJ., and Judge Kimberly Childs concur. Melton, C. J., concurs in judgment only. Peterson, J., not participating. Bethel, J., disqualified.

Decided March 13, 2019.

Certiorari to the Court of Appeals of Georgia — 343 Ga. App. 761.

Hull Barrett, Christopher A. Cosper, for appellant.

Ira L. Foster, Kenneth J. Jones, Lisa J. Krisher, Susan A. Reif, for appellee.

Hunter Maclean Exley & Dunn, Christopher R. Jordan, amicus curiae.