**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 27, 2020**

# In the Court of Appeals of Georgia

A19A2114. RIVERDALE LAND GROUP, LLC et al. v. CLAYTON COUNTY, GEORGIA et al.

DILLARD, Presiding Judge.

Riverdale Land Group, LLC[1] appeals the trial court's dismissal of its complaint against the Board of Commissioners of Clayton County, Georgia, and Clayton County, Georgia, in which it challenged the Board's denial of RLG's application for a conditional-use permit related to its proposed construction of a convenience store and gas station. Specifically, the trial court dismissed RLG's complaint on the basis that filing a petition for a writ of certiorari was the only way it could seek review of

---

[1] Riverdale Land Group's manager, Ayaz Ali, is also an appellant in this case. We refer to Riverdale Land Group and Ayaz Ali collectively throughout this opinion as "RLG."

the Board's decision. RLG argues that the trial court erred in doing so, but for the

reasons set forth *infra*, we affirm.

The relevant facts are brief and undisputed.[2] RLG owns real property consisting

of 2.376 acres located in Clayton County, and it is zoned as "General Business" under

a county zoning ordinance. RLG sought to construct a gas station on the property,

which required it to obtain a conditional-use permit. To that end, on December 5,

2017, RLG submitted an application to the Board, requesting such a permit. But on

July 17, 2018, the Board denied RLG's application, which prevented it from

constructing the gas station.

Thereafter, RLG filed a complaint in the Superior Court of Clayton County

that, in relevant part, raised several constitutional challenges to the County's zoning

ordinances and requested mandamus relief. Specifically, RLG sought an order

requiring the County to approve its application for a conditional-use permit. The

County filed a response, as well as a motion to dismiss the complaint for lack of

---

[2] Because this is an appeal from the grant of a motion to dismiss, the facts set forth in this opinion are gleaned primarily from RLG's complaint. *See Republic Title Co., LLC v. Andrews*, 347 Ga. App. 463, 464 (819 SE2d 889) (2018) ("In ruling on a motion to dismiss, the trial court must accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff . . . ." (punctuation omitted)).

subject-matter jurisdiction and for failure to state a claim upon which relief could be granted. In doing so, the County argued, *inter alia*, that RLG is not entitled to mandamus relief because it has an adequate remedy at law—*i.e.* filing a writ of certiorari in the superior court—and its failure to seek certiorari review invalidates its remaining constitutional claims. Following additional responsive pleadings, the trial court held a hearing on the matter, and ultimately granted the County's motion to dismiss. In its order, the court concluded that the Board's decision on RLG's application for a conditional-use permit must be reviewed via a petition for certiorari—rather than by filing a complaint for mandamus relief—because the Board's decision-making process was judicial in nature. The court also determined that RLG's constitutional claims were barred and waived due to its failure to file a such a petition. This appeal follows.

In ruling on a motion to dismiss, the trial court must "accept as true all well-[pleaded] material allegations in the complaint and must resolve any doubts in favor of the plaintiff."[3] Importantly, when a question of law is at issue, as here, we

---

[3] *Roberson v. Northrup*, 302 Ga. App. 405, 405 (691 SE2d 547) (2010) (punctuation omitted).

"owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[4] With these guiding principles in mind, we turn to RLG's claims of error.

1. RLG argues that the trial court erred in dismissing its claim for mandamus relief based on a finding that the County's denial of its application for a conditional-use permit was "akin to a judicial act" such that it must be challenged through the certiorari process. We disagree.

OCGA § 5-4-1 (a) provides: "The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers, including the judge of the probate court, except in cases touching the probate of wills, granting letters testamentary, and of administration." On the other hand, certiorari is not an appropriate remedy to "review or obtain relief from the judgment, decision or action of an inferior judicatory or body rendered in the exercise of legislative, executive, or ministerial functions, as opposed to judicial or quasi-judicial powers."[5] Furthermore, the Supreme Court of Georgia has consistently held

> that judicial and quasi-judicial decisions made by city and county governing authorities may be appealed to the superior court by certiorari

---

[4] *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

[5] *City of Cumming v. Flowers*, 300 Ga. 820, 823 (3) (797 SE2d 846) (2017).

4

pursuant to this state certiorari statute—with no reference to whether the local ordinance also provides for certiorari review.[6]

Simply put, when an official or agency's action is "subject to review by certiorari, the writ of mandamus is unavailable."[7] We must decide, then, whether the County's denial of RLG's application for a conditional-use permit was judicial or quasi-judicial in nature. If so, certiorari relief was available to RLG under OCGA § 5-4-1 (a) and mandamus relief was not an option.

Recently, in *Housing Authority of City of Augusta v. Gould*,[8] the Supreme Court of Georgia acknowledged that "the determination of what is a ministerial or administrative duty and what is a judicial function is often a matter of extreme

---

[6] *Id.* at 827 (5) (a); *see Hous. Auth. of City of Augusta v. Gould*, 305 Ga. 545, 550 (2) (826 SE2d 107) (2019) ("Long settled precedents of this Court establish that the writ runs not only to judicial proceedings in inferior courts, but also to quasi-judicial proceedings before agencies of local government.").

[7] *Bibb Cty. v. Monroe Cty.*, 294 Ga. 730, 734 (2) (a) (755 SE2d 760) (2014); *see Blalock v. Cartwright*, 300 Ga. 884, 886 (II) (799 SE2d 225) (2017) ("[When] a litigant seeks to compel some action that could be obtained by pursuing certiorari in superior court or seeking review by an administrative agency, mandamus will not lie."); *Ga. Lottery Corp. v. 1100 Shorter Dollar, LLC*, 351 Ga. App. 688, 689 (832 SE2d 665) (2019) ("[I]f there be a specific remedy by certiorari, the right of mandamus will not lie." (punctuation omitted)).

[8] 305 Ga. 545 (826 SE2d 107) (2019).

difficulty."[9] Nevertheless, our Supreme Court provided guidance for making such a determination, explaining that there are "three essential characteristics of a quasi-judicial act."[10] First, a quasi-judicial act occurs in situations when "all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure."[11] Second, a quasi-judicial act requires "a decisional process that is judicial in nature, involving an ascertainment of the relevant facts from evidence presented and an application of preexisting legal standards to those facts."[12] Third, a quasi-judicial act reviewable by writ of certiorari is one that is "final, binding, and conclusive of the rights of the interested parties."[13] Finally, our Supreme Court has also explained that "[g]enerally speaking, an administrative determination is adjudicative in character if it is particular

---

[9] *Id.* at 551 (2) (punctuation omitted).

[10] *Id.*

[11] *Id.* (punctuation omitted).

[12] *Id.*

[13] *Id.*

and immediate, rather than, as in the case of legislative or rule making action, general and future in effect."[14]

In their briefs, both parties rely heavily on *City of Cumming v. Flowers*,[15] a recent case in which the Supreme Court of Georgia held that a zoning board's decision on a request for a variance from a zoning ordinance was quasi-judicial in nature and could be reviewed only through a writ of certiorari.[16] Specifically, the *Flowers* Court noted that the zoning ordinance at issue required the zoning board to

---

[14] *State v. Int'l Keystone Knights of the Ku Klux Klan, Inc.*, 299 Ga. 392, 401 (4) (a) (788 SE2d 455) (2016) (punctuation omitted); *see Wolfe v. Boards of Regents of the Univ. Sys. of Ga.*, 300 Ga. 223, 228 (2) (b) (794 SE2d 85) (2016) ("A decision of an adjudicatory nature is one that is immediate in application, is specific in application, and commonly involves an assessment of facts about the parties and their activities, businesses, and properties. It is not one that is, as in the case of legislative or rule making action, general and future in effect." (punctuation and citation omitted)).

[15] 300 Ga. 820 (797 SE2d 846) (2017).

[16] *See id.* at 825 (4). Although *Flowers* involved a request for a variance from a zoning ordinance, the Supreme Court of Georgia in that case cited other decisions involving conditional-use permits and noted that "it is not clear that conditional and special use permit cases are meaningfully different from variance cases in [the context of determining whether certiorari relief is available], at least in cases where the zoning board must apply a set of factors set out in the zoning ordinance to the specific facts of the conditional or special use request." *Id.* at 827 (5) (b) n.5. As explained more fully *infra*, the zoning ordinance at issue provides such factors for the Board to consider. Thus, in the context of determining whether certiorari relief is available to RLG, we rely on some similar cases involving variances, including *Flowers*.

7

consider "whether the facts applying to a *specific piece of property* warrant relief from zoning under the standards set in the local ordinance."[17] Indeed, the Board's zoning decision in *Flowers* "required the zoning board to determine the facts and apply the ordinance's legal standards to them, which is a decision-making process akin to a judicial act."[18] Furthermore, the zoning ordinance in *Flowers* required that the board "hold a hearing that [was] open to the public, give due notice to the aggrieved party of the hearing, and inform all parties of its decision in writing within a reasonable time."[19] And at the hearing in *Flowers*, the zoning board "heard from parties for and against granting the variance."[20] In sum, the *Flowers* Court noted that the Board's discretion was "tightly controlled by the ordinance, and the [the Board's] decision was immediate in application, specific in application, and involved an assessment of facts about the parties and their activities, businesses, and properties."[21]

---

[17] *Flowers*, 300 Ga. at 823 (3) (punctuation omitted) (emphasis supplied).

[18] *Id.* at 824 (3) (punctuation omitted) (emphasis supplied).

[19] *Id.* (punctuation omitted).

[20] *Id.*

[21] *Id.* (punctuation and citation omitted).

Thus, the *Flowers* Court concluded that "the variance decision was quasi-judicial" in nature.[22]

Here, we are persuaded that the zoning decision at issue is substantially similar to the zoning decision in *Flowers*. Significantly, the relevant zoning ordinance required RLG to provide detailed information regarding *the specific property* at issue, including "[a] site plan drawn with a straight edge, signed, and dated, clearly show[ing] the entire layout of the property and all features relevant to the conditional[-]use request." And under the ordinance, RLG also had to supply a letter of intent to the Board

> describing the details of the conditional[-]use request including but not limited to: The ways in which the conditional use shall comply with the applicable development standards of [the zoning ordinance,] [t]he ways in which the conditional use shall be consistent with the decision criteria described by . . . [the ordinance,] and [a]ny written commitments being made by [RLG].

Additionally, the application required RLG to provide a letter from the Clayton County Board of Health, "indicating that the conditional use will make acceptable use of an existing or proposed septic system, or a letter from a public sewer provider

---

[22] *Id.*

stating that the proposed conditional use shall be served by its utility." Moreover, as

in *Flowers*, the zoning ordinance at issue likewise mandated that a public hearing be

scheduled for review of the conditional-use application within 60 days of its

certification and notice to the parties of the scheduled hearing. Finally, the zoning

ordinance before us provides six "decision criteria" that the Board may consider

regarding the proposed use of the property in deciding whether to grant a permit.

Specifically, those considerations are as follows:

> 1. A proper application has been filed in accordance with the requirements of the [o]rdinance.
>
> 2. A recommendation has been certified from the Zoning Advisory Group.
>
> 3. The applicant is in compliance with the particular conditions for the proposed conditional use permit that are required by this [o]rdinance.
>
> 4. The use is consistent with the purposes and intent of this [o]rdinance.
>
> 5. Compliance with the decision criteria contained in Section 13.10 of this [o]rdinance; and
>
> 6. The satisfaction that the benefits of and need for the proposed conditional use permit.[23]

---

[23] RLG attempts to distinguish *Flowers* by contending that, unlike that case, the Board's decision was not "tightly controlled" by the relevant zoning ordinance.

Thus, the zoning decision here, as in *Flowers*, required the Board to determine "the facts and apply the ordinance's legal standards to them, which is a decision-making process akin to a judicial act."[24] Furthermore, the Board's decision-making process satisfies all three criteria for a quasi-judicial act set forth by the Supreme Court of Georgia in *Gould*. Indeed, the zoning ordinance here required a public hearing within a reasonable time (*i.e.* 60 days) and notice to the parties.[25] And

Specifically, RLG contends that the applicable zoning ordinance in *Flowers* required that seven particular requirements all be met before the variance could be granted, *see* 300 Ga. at 823 (3) n.2 (quoting the applicable zoning ordinance), while the zoning ordinance at issue here provides only that the Board *may* examine certain factors in making its decision. But even assuming that the Board's decision was not as "tightly controlled" as the one in *Flowers*, that is merely one of many factors we must consider in determining whether the Board's decision was a quasi-judicial act, and as a result, it does not dictate the outcome of this appeal.

[24] *Flowers*, 300 Ga. at 824 (3) (punctuation omitted); *see Gould*, 305 Ga. at 551 (2) ("[A] quasi-judicial act is one that requires a decisional process that is judicial in nature, involving an ascertainment of the relevant facts from evidence presented and an application of preexisting legal standards to those facts."); *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 601 (II) (807 SE2d 876) (2017) (punctuation omitted) ("[A]dministrative determinations of a legislative nature are prospective in application, general in application, and often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person, determinations of an adjudicative nature, on the other hand, are immediate in application, *specific in application*, and commonly involve an *assessment of facts* about the parties and their activities, businesses, and properties." (punctuation omitted) (emphasis omitted)).

[25] *See supra* note 11 & accompanying text.

11

the decision-making process required an ascertainment of the relevant facts from evidence presented by RLG's permit request regarding its specific property and an application of preexisting legal standards to those facts.[26] Furthermore, it is undisputed that the Board's decision was final, binding, and conclusive of the rights of the parties.[27] Finally, the Board's decision was particular and immediate, rather than general and future in effect.[28] And for all these reasons, we conclude that the Board's denial of RLG's application for a conditional-use permit was quasi-judicial in nature. Thus, OCGA § 5-4-1 applied and RLG was entitled to "seek review of the [Board's] quasi-judicial decision . . . by petition for certiorari in the superior court."[29] And because certiorari was available, "mandamus was not."[30]

Nevertheless, RLG raises several arguments in an attempt to distinguish this case from *Flowers* and demonstrate that the Board's decision was not a quasi-judicial act. We find these contentions unavailing.

---

[26] *See supra* note 12 & accompanying text.

[27] *See supra* note 13 & accompanying text.

[28] *See supra* note 14 & accompanying text.

[29] *Flowers*, 300 Ga. at 834 (7) (punctuation omitted).

[30] *Id.*

12

First, RLG relies on *Manning v. A. A. B. Corporation*,[31] a 1967 opinion by the Supreme Court of Georgia, rejecting the contention that the proper method to appeal the denial of a conditional-use permit was a petition for certiorari because "the board of commissioners was not acting as a judicial body, and it did not render a judicial or quasi-judicial judgment."[32] But the *Flowers* Court cited *Manning*, among other cases, and acknowledged that its prior decisions were "inconsistent" regarding "whether local zoning decisions . . . qualified as a decision by an inferior judicatory or a person exercising judicial powers under OCGA § 5-4-1."[33] Furthermore, after acknowledging *Manning* and other similar cases, our Supreme Court noted that "[o]ther cases decided during the same period . . . held that a conditional use permit decision could be appealed by certiorari, and suggested that variance decisions may be quasi-judicial."[34] Additionally, our Supreme Court has rightly acknowledged that "the line between legislation and adjudication is not always easy to draw."[35] Significantly, in *Manning*,

[31] 223 Ga. 111 (153 SE2d 561) (1967).

[32] *Id.* at 115 (1) (a).

[33] *Flowers*, 300 Ga. at 827 (5) (a) (punctuation omitted).

[34] *Id*. at 828 (5) (b) (citation omitted).

[35] *Diversified Holdings, LLP*, 302 Ga. at 601 (II) (punctuation omitted); *accord Int'l Keystone Knights of the Ku Klux Klan, Inc*., 299 Ga. at 401 (4) (a); *see Gould*,

13

the Supreme Court's ruling was conclusory.[36] Indeed, unlike *Flowers*, the *Manning* Court did not discuss the basis for its decision or provide any guidance for future cases.[37] Thus, it is not possible for this Court to determine whether there is a meaningful distinction between *Flowers* and *Manning* that might otherwise alter our holding in this case. In any event, to the extent these two Supreme Court cases are in tension, we are bound to follow *Flowers*, which was decided more recently in 2017.[38]

RLG next argues that the legislative nature of a zoning board's ruling on an application for a conditional-use permit is "plainly evident by reference to the Zoning Procedure Law [ZLP][39]." Specifically, RLG references OCGA § 36-66-3 (4) (E),

---

305 Ga. at 551(2) ("[T]he determination of what is a ministerial or administrative duty and what is a judicial function is often a matter of extreme difficulty." (punctuation omitted)).

[36] *See Manning*, 223 Ga. at 115 (1) (a).

[37] *See generally id.*

[38] *See White v. State*, 305 Ga. 111, 122 (3) n.10 (823 SE2d 794) (2019) (noting that a high court generally follows its decision in the most recent case, "which must have tacitly overruled any truly inconsistent holding" (citation omitted)); *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 203 (219 SE2d 115) (1975) (holding that, in the event two precedents of the Supreme Court of Georgia are in conflict, the more recent case is controlling, because the case decided "later in time is the more persuasive decision").

[39] *See* OCGA § 36-66-1, *et seq.*

14

which provides that "'[z]oning decision' means final *legislative* action by a local government which results in[,]"[40] *inter alia*, "[t]he grant of a permit relating to a special use of property." RLG contends that the grant of a conditional or special use permit is a legislative, rather than judicial, action because that is how it is characterized by the ZLP. But the Supreme Court of Georgia has instructed that—in determining whether a Board's zoning decision is administrative or quasi-judicial—"[s]ubstance matters far more than form, and the courts need not capitulate to the label that a government body places on its action."[41] Thus, the ZLP's characterization of a zoning board's decision on an application for a special-use permit as "legislative" is not determinative.[42]

---

[40] (Emphasis supplied).

[41] *Flowers*, 300 Ga. at 824 (3) n.3 (punctuation omitted); *see Int'l Keystone Knights of the Ku Klux Klan, Inc.*, 299 Ga. at 402 (4) (a) ("In distinguishing between legislative and adjudicative determinations, there seems to be broad agreement that substance matters far more than form, and the courts need not "capitulate to the label that a government body places on its action." (punctuation omitted)).

[42] *See Flowers*, 300 Ga. at 824 (3) n.3 (noting that the zoning ordinance's description of variance decisions as "administrative or quasi-judicial" was not determinative because substance matters more than form); *Mack II v. City of Atlanta*, 227 Ga. App. 305, 309 (1) (489 SE2d 357) (1997) ("[D]escriptive uses of [the word 'administrative'] are not controlling. It is not the description of the office, body, or board performing the action that is scrutinized; the character and nature of the authorized function controls the issue of whether the function is judicial or

15

Finally, RLG argues that the trial court misconstrued the Supreme Court of Georgia's decision in *Diversified Holdings, LLP v. City of Suwanee*,[43] in finding that the Board's action in this case was adjudicative in nature. Specifically, RLG asserts that *Diversified Holdings* "did not hold that certiorari is required to obtain superior court review of a local zoning determination . . . ." And this is true because *Diversified Holdings* did not involve an appeal from a zoning board's decision on an application for a variance or a conditional-use permit. Instead, that case involved a property owner's contention that the zoning board's refusal to rezone its property was

quasi-judicial." (punctuation omitted)). In arguing that the zoning decision at issue was legislative in nature, RLG relies on this Court's decision in *Druid Hills Civic Ass'n, Inc. v. Buckler*, 328 Ga. App. 485 (760 SE2d 194) (2014), disapproved of on other grounds by *Hourin v. State*, 301 Ga. 835 (804 SE2d 388) (2017). In *Buckler*, we held that "[i]f approval of the sketch plat was a 'zoning decision' as defined by the Zoning Procedures Law, the Planning Commission was acting in a legislative capacity when it approved" the sketch plat. *Buckler*, 328 Ga. App. at 492-93 (3). But while the *Buckler* Court referenced OCGA § 36-66-3 (4) (E), it ultimately concluded that the application at issue was *not* a special use application, but rather a decision on "a variance or permit." *Id.* 494 (3). And we concluded that the zoning board's decision in *Buckler was* an administrative or quasi-judicial action. *See id.* Thus, it is unclear how *Buckler* has any applicability here. In any event, to the extent that *Buckler* conflicts with the holding in *Flowers*, we are bound to follow the decisions of our Supreme Court. *See State Highway Dep't v. Wilson*, 98 Ga. App. 619, 622 (2) (a) (106 SE2d 544) (1958) ("A majority decision of the Supreme Court is binding as a precedent on the Court of Appeals until the decision is overruled or modified by the Supreme Court.").

[43] 302 Ga. 597 (807 SE2d 876) (2017).

16

an unconstitutional taking.[44] Thus, because *Diversified Holdings* has no direct applicability here, it is irrelevant whether the trial court misconstrued it.

2. RLG next argues that the trial court erred in dismissing its constitutional claims. This claim is likewise without merit.

Here, the trial court found that because RLG failed to file a petition for writ of certiorari to seek review of the Board's quasi-judicial decision to deny its application for a conditional-use permit, its constitutional claims were waived and barred. And we have expressly held that "[p]arties who choose not to follow [the] procedure [for seeking certiorari review] are barred from seeking relief by filing a new action in superior court, *even if they are arguing constitutional violations by the*

---

[44] *See id.* 598-99 (I).

17

*municipality*."[45] Thus, because RLG did not apply for certiorari review in the superior court, it waived its constitutional challenges.

Nevertheless, RLG relies on *Moon v. Cobb County*[46] and *Mayor & Aldermen of the City of Savannah v. Rauers*[47] to support its argument that the trial court erred in dismissing its constitutional claims. But RLG's reliance on those cases is misplaced. In *Moon*, the Supreme Court of Georgia distinguished two types of zoning decisions. The first type is when a "constitutional attack is made against a zoning

---

[45] *10950 Retail, LLC v. City of Johns Creek*, 299 Ga. App. 458, 460 (1) (682 SE2d 637) (2009) (emphasis supplied); *see City of Cedartown v. Pickett*, 193 Ga. 840, 843 (3) (20 SE2d 263) (1942) ("Even [when] a case involves directly and primarily a property right, and even though equity may afford to the person so injured a more adequate and complete remedy than he would have under the procedure at law, yet [when] he, as the defendant in a proceeding before a municipal judicatory, has elected to maintain his rights under that proceeding and has thus had his day in court, he cannot ordinarily thereafter be heard on a petition in equity, to question the constitutionality of the ordinance involved in the decision; but his remedy was to have made his defense before the municipal judicatory, and to have corrected by certiorari any error in its decision." (citations omitted)); *Soerries v. City of Columbus*, 222 Ga. App. 745, 746 (476 SE2d 64) (1996) (holding that "[t]he exclusive mechanism by which [the property owner] could challenge [a City] Council's revocation of his liquor license was by filing a petition for certiorari, and thus, the trial court did not err in dismissing his claims, which included constitutional challenges).

[46] 256 Ga. 539 (350 SE2d 461) (1986).

[47] 253 Ga. 675 (324 SE2d 173) (1985).

18

ordinance[,]" and in such cases, "it acts in its *legislative capacity* should it elect to amend the ordinance."[48] The second type—the one at issue here—is when "a special permit is sought under terms set out in the ordinance[,]"[49] and as explained *supra*, in such cases, the governmental "body acts in a quasi-judicial capacity to determine the facts and apply the law."[50] *Moon*, unlike this case, involved the first type of zoning case, and thus, it is inapplicable here.[51] And *Rauers* is inapposite for the same reason.[52]

---

[48] *Moon*, 256 Ga. at 539 (punctuation omitted).

[49] *Id.* (punctuation omitted).

[50] *Id.* (punctuation omitted).

[51] *See id.* at 540 (noting that the paragraph relating to the first type of zoning decision, a challenge to the constitutionality of a zoning ordinance, applied to the issues in the case). We acknowledge that, in *Moon*, the Supreme Court of Georgia noted, as to the second type of zoning decision, "[a] disappointed landowner travels to superior court by direct appeal, if the zoning ordinance so provides, or otherwise by mandamus." *Id.* But again, while the *Moon* Court referenced mandamus relief, it did not involve the type of zoning decision at issue here, it did not discuss the availability of certiorari review, and it described a decision on a "special permit" as a quasi-judicial action. *See id.* at 539-40. Regardless, to the extent that *Moon* conflicts with *Flowers*, we are bound to follow *Flowers* because it is the more recent precedent. *See supra* note 37.

[52] *See Rauers*, 253 Ga. at 675 (noting that the appeal was from a trial court's decision to *set aside a zoning ordinance* because it was unconstitutional).

For all these reasons, we affirm the trial court's dismissal of RLG's complaint.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*